The opinion of the court was delivered by
Gibson, C. J.
The consequences that would be produced by deciding this question in a particular way, have induced me to consider it with more than ordinary attention, and the result is a settled conviction that in Pennsylvania a recognizance does not bind lands, except in two instances where the contrary is established; in the one by an act of assembly, and in the other by long and continued usage.
The opposite opinion seems to have grown out of a supposition that a recognizance is a lien at the common law; than which nothing is more unfounded. This form of security was introduced to save the expense and delay of a trial; for, as the court received the acknowledgment and attested the instrument, no further proceeding was necessary to make it evident, and the recognizance, therefore, had the essential properties of a judgment. But so far was land from being bound either by judgment or recognizance, that it was not even subject to execution, being bound for the feudal services to the lord on whom a new tenant could not be imposed without his consent. And to this there were but three exceptions. The first in favour of the king, by reason of his prerogative: — The second in favour of an obligee, where the heir of the obligor was specially bound; the law dispensing with feudal objections, rather than a fair creditor should be without remedy, and subjecting the land of the obligor to execution in the hands of the heir: — And the third in favour of the grantee of a rent charge; it being indifferent to the heir of the grantor whether the land, which was liable at all events, should answer the rent by a distress or an execution, (2 Inst. 394. Sir William Harbert's Case, 3 Rep. 11. 2 Bac. Abr. 329.) A judgment or recognizance may have been a lien in favour of the king, but not of the obligee or grantee in the other excepted cases; for the lien in those cases was not the consequence of the demand having passed in remjudicatam, or of its having been ascertained of record; but it was inconsequence of the action having been brought in respect, not of the person, but of the land itself, which was charged substantially as debtor, and therefore as having been originally bound. Moreover, the recognizance was inapplicable to those cases, as a form of security. Thus stood the láw previous to the 13 Ed. 1, c. 18, usually called the Stat. Westm. 2, by which it was enacted that — “When debt is recovered or knoioledged in the king’s court, or damages awarded, it *12 shall be from thenceforth in the election of him that sueth for such debt or damages, to have writ that the sheriff fieri facial of the lands and goods; or that the sheriff shall deliver to him all the chattels of the debtor, saving only his oxen and his beasts of the plough, and the one half of his land, until the debt be levied on a reasonable price or extent.” This is the first and only authority in England for seizing lands in execution; and it consequently is the root from which has sprung the lien both of judgments and recognizances. I speak not here of statutes merchants or staple, nor of the recognizance on the 23 Hen. 8: — these are obligations of record in pursuance of particular acts of parliament, on which the process of execution is not according to the course of the common law, and for the purposes of the argument, we have nothing to do with them. It is certain, however, that lien was first attributed to judgments and recognizances, in giving a construction to the Stat. of Westm. 2; for in Baskerville v. Brocket, (Cro. Jac. 449,) it was made a question whether the lands of special bail which had been bona fide leased or sold after the acknowledgment of the recognizance, but before judgment against the principal, were extendible; and this on the ground of a doubt whether such recognizance were within the true intent of the statute. Coke, in. commenting on this statute, (2 Inst. 394,) says, that “the execution which is given by it relates to the lands which the conusor had at the time of the judgment or acknowledgment of the recognizance;” and so is Fitzherbert’s Natura Brevium, (594,) Shepherd’s Touchstone, (359,) and every other respectable ancient book on the subject. In Tidd’s Practice, (989,) a recognizance is indeed said to be a lien at the common law, and for this is cited 2 Bac. Mr. 363, and 1 Co. 14; neither of which support the position of the author, but directly the contrary. But for any thing more important than a point of practice, Tidd is not authority. The same thing is sometimes loosely said of judgments; but where a statute subjects lands to execution which were not so before, it is evident that all questions in'relation to what lands were meant in particular, must depend on a construction of the statute itself. If the Stat. of Westm. 2. were repealed, no lands could be taken in execution at all, except by virtue of other statutes; so that the lien of both judgments and recognizances necessarily depends on the statute which subjects lands to be levied in satisfaction of them. In England it has been doubted whether any recognizance be a lien from the acknowledgment,' — but without reason, recognizances being put, by the very words-of the statute, on a footing with judgments, about the lien of which there never has been a doubt. Why either should have been considered a lien is not very obvious; for neither is expressly declared to be so by the statute. And even if the lien were the consequence of the words by which, since the statute, the conusor usually agrees to have the debt levied of his lands and tenements as well as of his goods and chattels, (another pregnant source of error in *13 the manner of considering the subject,) still these words are just as applicable to the lands which he should have at the day of payment or even of execution levied, (in which sense they are understood as regards chattels,) as to those which he has at the acknowledgment of the recognizance. But the lien is not by force of particular words creating a charge upon land, but by force of the statute, which puts recognizances on the footing of judgments; and these bind independently of the terms of the obligation or agreement on which suit was brought, and even for damages recovered where there was no agreement at all. It is the acknowledgment of the debt, and not the agreement of the conusor to subject his lands to execution, that brings a recognizance within the statute and produces this peculiar effect. The words are, — “When debt is recovered or knowledged within the king’s court, &C.” And here a doubt cannot be entertained that a recognizance on which the clause in question should be omitted, would equally be a lien by force of the statute; for where it is inserted, the parties stipulate for nothing more than what the law provides, independently of any stipulation. Dalton says, “ the lien arises by construction of law,” (office of sheriff, 134,) and Colee says so too, (7 Rep. 39, a.) and, moreover, that it extends no further back than the date of the judgment and recognizance only, because the demand is in respect of thq person, and not of the land, (Co. Lit. 102, b.) which clearly shows he did not view it as a consequence of the agreement of the conusor, or of the land being charged. But what puts the matter beyond the possibility of a doubt is, that where the conusee proceeds by original founded on the recognizance, he shall have execution of the lands had only at the time of recovering judgment, and not of those had at the acknowledgment of the recognizance; although it is otherwise where he proceeds by scire facias, and treats the recognizance as a judgment in the first instance, (Dyer, 306, a. A) Now this distinction would be immaterial, if the lien arose from the form of the instrument, as a security pledging the land, and not as an incident of the acknowledgment as a species of judgment: in that view it would hold the land like a mortgage, independently of any mode of proceeding to have execution of it. But this, we see, is not the case. The lien, therefore, is undoubtedly by force of the statute; and my own opinion is, that the prevailing construction was adopted to give the words of it as beneficial an operation in favour of creditors as they would bear, or else in analogy to the Stat. de Mercatoribus, passed a few months after it, in which it is declared “that the conusee shall have execution of all the lands that were in the hands of the conusor, the day of the recognizance made, into whose, hands soever they come after, either by feoffment or otherwise.” But, however this may be, it is a circumstance of decisive importance, that the Stat. Westm. 2, is not nor ever has been in force in Pennsylvania. It is not included in the report of the judges, and its *14 place is supplied by acts of our own legislature, which differ from it so essentially as to subject lands to execution only on judgment rendered.
So much for the English law on the subject; — and now for our own. But two passages in all our acts of assembly give colour to a notion, that lands were intended to be sold on recognizances, as in England. The first is the “ act for taking lands in execution,” passed in 1705, by which the legislature decláre, in the first section, that “ all lands shall be liable to be seized and sold upon judgment and execution obtained;” and afterwards, in the second section, enacts, that ec where any debt is hereafter recovered or damages awarded, or where any debt is acknowledged before such as shall have power to take cognizance thereof, and execution awarded thereupon to be levied upon the lands, &c. of any person whatever,” the sheriff shall not be at liberty to sell before condemnation by an inquest: — And from this recital it might seem that the legislature viewed recognizances in the light of judgments. Undoubtedly the act was passed under a belief that the Stat. Westm. 2; might turn out to be in force in the colony; and if that had been the case, as the legislature was not competent to repeal it without the concurrence of the crown, they may have thought it prudent to provide for what must have appeared to them an important contingency. But no intention is apparent to introduce the statute then, if it had not been introduced before: for by the first section, which alone is declaratory of the scope of the act, lands are to be liable to execution only on judgment obtained, and the act of 1700, which is the foundation of the system, in like manner authorizes execution only in pursuance of a judgment. But the whole course of our jurisprudence shows there never was a time when an execution might be issued here, directly and immediately on a recognizance, as in England. On the contrary, the practice has been invariable to proceed by scire facias, even within the year, according to the 13 Ed. 1. c. 45, or by original writ on the recognizance: — and, by the way, an action of debt only, and not a scire facias, lies in the common pleas, on a recognizance in the Orphans’ Court; for as the scire facias is a judicial writ, it lies only in the court which has power to award execution, and that undoubtedly is the court in which the recognizance is, (2 Bac. Abr. 356,) and therefore, on the principle of the case in Dyer, this recognizance, acknowledged in the Orphans’ Court, and sued erroneously by scire facias in the Common Pleas, would not be a lien even according to the Stat. Westm. 2. By this Í do not wish to be understood that such a scire facias is irregular, or even erroneous; on the contrary, it is sustainable on the ground of communis error, but sustainable only as being substantially an action of debt, the place of which it has usurped. But to proceed. The second instance in which a recognizance might seem to be put on the footing of a judgment, is found in the supplement to the act for ac *15 knowledging and recording deeds, which was passed the 23d September, 1783. In the third section of this supplement, provision is made for recording mortgages which had been executed between the 1st of January, 1776, and the 18th of June, 1783; and then follows a proviso that nothing contained in the section shall operate against any subsequent judgment, statute, recognizance, attainder, forfeiture, or lien, or against any subsequent bona fide mortgagee or purchaser. This proviso exhibits nothing but sp overstrained and a ridiculous cautiousness, which could be of no manner of use; for it is palpably absurd to suppose there can be such a thing in Pennsylvania as a statute merchant or staple; and the inference that might be made from this provision, in favour of the lien of recognizances, would go just so far to prove the existence of statutes among us, as a peculiar species of security. Particular expressions in a statute, such as these, avail little in opposition to a system of legislation on the basis of a contrary state of things; which I affirm has taken place in a way to demonstrate that the legislature have acted on full conviction that lien is not an incident of a recognizance. The inference from the act of the 21st of March, 1772, for the prevention of frauds and perjuries, is forcible and direct. That act, as far as it goes, is copied from the British statute of frauds, of which the legislature adopted, among other things, the provision for specifying the actual date of judgments, and limiting the lien of them to that period, but rejected the analogous provision as to recognizances, by which they are declared to be a lien only from the time of enrolment; thus distinctly recognizing the lien of judgments, and refusing to recognize the supposed lien of recognizances. This omission could not have been accidental, and it therefore indisputably discloses the opinion of the legislature in 1772. Again, in 1791, when they direct satisfaction to be acknowledged of record when any judgment shall be satisfied; and in 1798, when they enact that judgments shall remain a lien for but five years, if not' revived within that time by scire facias; they adapt the provisions of these two acts to judgments exclusively; ánd hence, it may be affirmed, they did not suppose a recognizance to be a lien, or else they surely would have laid it under the same restriction; for it cannot be believed that they would intentionally have removed a particular cause of offence to purchasers, and permitted another, which stood in equal mischief, to remain. But, what is still more indicative of án opinion, in the act of the ,28th of March, 1803, by which sheriffs and coroners are directed to give security by recognizance, (the only instance in which the legislature has acted directly on the subject,) it is expressly provided that it shall be a lien on the lands of the conusors; which would be an act. of supererogation, at least as respects lands within the county, if it had been thought to be a lien at common law. These recognizances are to be recorded by the. recorder of deeds, to give .notice to the purchasers. But still fur *16 ther. No debt acknowledged or ascertained to be due, in the Orphans’ Court, and of which the records of that court are the only evidence, was intended to be an incumbrance on the lands of the debtor; for when by the act of the 1st of Jlpril, 1823, the legislative declare, that balances found due by the executors, administrators, or guardians, shall be liens on their lands; they direct certified extracts or transcripts to be filed in the prothonotary’s office; thus explicitly evincing an intention to make that office, and the office of the recorder of deeds, exclusively sources of information to purchasers; consequently, a recognizance in the Orphans’ Court would not be a lien, whatever might be thought of a recognizance in the court of common law.
■ The lien of judgments stands on different ground. Its existence is recognized in the act of frauds and perjuries, and it obviously arises from the acts for taking land in execution; and these have received a construction which in many respects is similar to that of the Stat. Westm. 2. This is apparent in Calhoun v. Snyder, (6 Bin. 135,) although I am aware that in the end all the judges concurred in putting that case on the practice of our own courts.
If, then, a recognizance be not a lien at the common law, or by any positive law in force here, it remains to be seen how far it is so by a general custom of our own; and this will depend on the decisions of the courts and the practice of the profession.
In Campbell v. Richardson, (1 Dall. 131,) Chief Justice Shippen, when president of the common pleas, (but at any time a great authority,) held that a recognizance is not a lien on the lands of special bail, and this on the ground of a general understanding which was said to have been carried into universal practice. Had this sound lawyer and excellent judge reflected, but for a moment, on the origin of the lien of recognizances, he would not have put the case on the existence of a custom. Next came Walton v. Willis, (1 Dall. 265,) the authority of which, as a case in point, is absolutely nothing. What was said was not the point decided, but the dictum of a single judge, thrown out in the course of the argument, without reflection and under a mistaken impression of the law. — Still, as the foundation of a practice which has produced an important anomaly, it is worthy of particular consideration. But although it be altogether certain that Chief Justice M’Kean was under a momentary impression that a recognizance was a lien generally, yet what he did say was in relation to the case immediately under consideration, and was restricted in very special terms, to the lands taken at the valuation and acquired by the confirmation of the Orphans’ Court; and in this restricted sense it has been understood by a decisive majority of the profession. The opinion intimated in Taggart v. Cooper, (1 Serg. & Rawle, 497,) went no further; and in Kean v. Franklin, (5 Serg. & Rawle, 47,) the opinion of the court was studiously restrained to the very point decided. Then, to come directly home to the *17 business of the profession: — 'What surety, in acknowledging a recognizance was ever told that he was tying up his land? Or what counsel employed to examine a title, or purchaser examining for himself, was ever known to enter into the office of a clerk of the Orphans’ Court to search for recognizances or any other supposed incumbrances. The palpable inability of that officer to afford the least information, furnishes a triumphant answer to the question. These recognizances are neither indexed nor docketted; and, as respects sureties, there is no mode of coming at a knowledge of them but turning over, leaf after leaf, all the records of the office from the judicial organization of the county. If then, in the absence of legislative provision, the every-day transactions of a whole people can give form and consistence to their laws, the question has already been determined. From a lien restricted to the very lands taken at the valuation, purchasers can suffer no injury, as the proceedings in the Orphans’ Court, which constitute a link in the title, will necessarily direct them to the existence of it; but if these recognizances are to be treated as a general incumbrance, then has the legislature watched over the safety of bona fide purchasers in vain. The flood of litigation that would be let in would be greater than from any other source that could be opened, or from all other sources together. We cannot measure, or even guess at the extent of it. A dread of consequences may have biassed my judgment,1 but all my inquiries have led to one conclusion: — That neither by the British common law, or any British statute in force here, nor by any act of assembly, or usage or custom of our own, is any recognizance, except in the particular instances which I have indicated, a lien on the lands of the conusors.