## Cubbage *against* Nesmith.

A recognizance given for the payment of the distributive shares to the heirs of an intestate, by a purchaser, is a lien on the whole estate taken by him at the valuation, and not merely on the undivided interests of such heirs as have not received payment of their shares.

A purchaser at sheriff's sale, under a judgment obtained in a *scire facias* on the recognizance by the owner of one of the shares, obtains a good title for the whole estate.

ERROR to the common pleas of *Alleghany* county.

The plaintiff in error, William Cubbage, was the plaintiff below, and brought an ejectment to recover from the defendant, Thomas ·Nesmith, part of lot No. 44, on Penn street in the city of Pittsburgh. The plaintiff gave in evidence the petition of Thomas Wallace to the orphan's court of Alleghany county, at April term 1811, setting forth that he was the grantee of Henry Lutgen and Mary his wife, late Mary Laughrey, and John M'Farland and Jane his wife, late Jane Laughrey, which said Mary and Jane, together with Daniel and Nancy (Nancy still being in her minority), were the heirs at law, and only issue, of Edward Laughrey deceased, who also left a widow (now intermarried with John M'Neil), and died intestate and seised of said lot No. 44, and also of the half of lot No. 335, on Fourth street in the said city, and praying for a valuation or partition of the estate between the petitioner and the representatives of the intestate. The prayer of the petition was granted by the court, and an inquisition was accordingly taken on the 3d of June 1811, appraising the property as follows, to wit, lot No. 44 at 1450 dollars, and lot No. 335 at 673 dollars, amounting together to the sum of 2123 dollars. On the 18th of November 1811, the orphan's court awarded the estate, so appraised, to Thomas Wallace; and on the same day Thomas Wallace and William Wilkins entered into a recognizance in the sum of 4000 dollars, for the payment of the shares due to the heirs of the intestate, according to law, in six months. On the 16th of March 1816 James O'Harra, as the guardian of Nancy Laughrey, gave Thomas Wallace a receipt for 603 dollars 3 cents, in full of her one-fourth part of the valuation of the intestate's estate. Thomas Wallace thus became vested with the interests of three out of four of the heirs. On the 16th of May 1823 the petition of the administrators of Thomas Wallace, then deceased, was presented to the common pleas, setting forth that on the 20th of April 1815 a parol contract for the sale of the part of lot No. 44 now in dispute, to William Cubbage, the plaintiff, was entered into by Wallace, and praying the court for authority to execute a deed

[Cubbage v. Nesmith.]

for the same to the said Cubbage, which authority was granted on the 19th of July 1823; and on the 19th of September 1823 a deed was accordingly executed. The deposition of Lewis Peters was then read, proving this contract and sale by Wallace, in his lifetime, to Cubbage for the consideration of 600 dollars; the payment by Cubbage of 300 dollars in land; the occupancy by him of the slaughter-house on the ground for some time after the purchase; and the payment of the remaining 300 dollars to the administrators of Wallace.

The defendant then gave in evidence the record of a suit, brought to August term 1823 in the common pleas of Alleghany county, in the name of the commonwealth, for the use of Emanuel Baker and wife, against William Wilkins, surviving co-cognizor with Thomas Wallace deceased, with notice to the administrators of said Wallace, and to the terre tenants of lot No. 335. Baker and wife had become vested with the interest of Daniel Laughrey, the only heir whose interest in the estate remained unsatisfied. In that suit judgment was obtained on the 1st of August 1825 for 969 dollars 94 cents, under which lot No. 44 was levied upon, and on the 28th of January 1826, sold to James Cargill and Thomas Nesmith for 1000 dollars, to whom a sheriff's deed for the same, dated the 30th of January 1826, was duly executed, acknowledged and recorded. On the 19th of June 1827 Cargill and wife, by deed recorded on the 7th of August 1829, conveyed their interest in the lot to Nesmith.

The plaintiff then gave in evidence the record of a suit in the common pleas, brought to November term 1819, by John and Neal Darragh against Thomas Wallace's administrators, in which judgment was obtained for 354 dollars 14 cents. Under this judgment, lot No. 44, *inter alia*, was levied upon, and under a *venditioni exponas* to November term 1823, returned as sold for 105 dollars to John Darragh, James Cargill and Thomas Nesmith. A sheriff's deed for the same, dated the 3d of November 1823, was executed to Cargill and Nesmith, and duly acknowledged and recorded. Before this deed was executed, Cargill had notice of the claim of Cubbage.

The following, amongst other points, was submitted to the court below by the plaintiff's counsel.

The recognizance of Wallace and Wilkins gave to the plaintiffs in the *scire facias* a lien upon one undivided fourth part of lot No. 44; and a sale under the judgment, obtained by Baker and wife, transferred no more than the one undivided fourth part of the subdivision sold by Wallace to Cubbage.

Upon this point the court below (Shaler, president) charged, that the recognizance was a lien upon the whole of the lot, and that the lien of Baker and wife was not restricted to an undivided fourth part.

Error was assigned to this charge.

*Forward,* for plaintiff in error, contended, that the judgment *de terris* under the recognizance was a lien only on the undivided fourth part, which was the amount of the interest held in the lot by Baker

and wife, and was not a lien on the whole of the lot.    The lien is only commensurate with that interest, and the judgment could not operate to any greater extent.    Blocher *v.* Hess's Administrator, 1 *Serg. & Rawle* 460 ; Beattie and wife *v.* Smith, 4 *Yeates* 102 ; Fogelsonger *v.* Somerville, 6 *Serg. & Rawle* 267 ; Allen *v.* Reesor, 16 *Serg. & Rawle* 10—16 ; Kean *v.* Ridgway, *Ibid.* 60.

*Fetterman*, contra.

The opinion of the Court was delivered by

GIBSON, C. J.—The naked question on this record is, whether a recognizance in the orphan's court binds the whole estate, or only the undivided share of the child as it existed before it was vested in the cognizor by the decree of confirmation.    The doubt was formerly the other way, whether it did not bind all the cognizor's land taken at the valuation or acquired previously ; and that doubt was not resolved till it was settled in Allen *v.* Reesor, 16 *Serg. & Rawle* 10, that such recognizance binds no more than the land taken by the decree ; but the lien has not been thought capable of further restriction.  A child who has taken the estate at a valuation, is, as regards the land so taken, exactly in the situation of any other purchaser from tenants in common, against whom a judgment recovered by one of the tenants binds the whole estate : and why should not a recognizance ? To sell but what was the undivided purparty of a child as an interest in common, would defeat the very purpose of partition by distribution of the value, and undo all that the orphan's court had done. When an estate is incapable of partition in kind, as this was found to be by the inquest, the purpose of vesting the whole in a child or a purchaser, and giving the other children their shares in money instead of land, is to preserve the land from destruction by division : but, according to the theory of the argument, it would have to be brought, if not to a partition in kind at last, yet at least to a partition at the common law, modified, as it is, by our statutes ; in which the process, with its incidents of valuation, confirmation, lien, and sale of separate interests, might be repeated *toties quoties*.    For if the consolidated title of the children were again to be separated by successive sales of their respective shares, the purchasers would stand in relation to each other, as the children stood before the decree of confirmation ; a result certainly not contemplated by the legislature, who, in providing for partition in the orphan's court by distribution of value, meant to do more than lay a foundation for an action of partition at the common law.    But to lay all this out of view, as well as the costs that would be incurred, and the inconvenience that would be felt from consecutive sales of the separate shares, as the children should call for their money, it is evident that the title to a tract incapable of division, would sell to less advantage in parcels than in bulk.    No one would purchase, except at an undervalue, an interest which might require a lawsuit to give him the separate own-

[Cubbage v. Nesmith.]

ership of it, or at last but a compensation for it in money. It is therefore more beneficial for all parties in regard to the expense of the proceeding and the price to be obtained, as well as more consonant to analogy, to sell the whole together. We are therefore of opinion that the recognizance bound the entire title to the lot, and that the purchaser under it acquired an exclusive fee simple in the parcel in question.

Judgment affirmed.