## Hostetter *versus* City of Pittsburgh.

1. When a contract for the construction of work contains a stipulation that all questions of dispute arising thereunder shall be submitted to a person named for final decision, that is a bar to a common law action therefor. And when the referee's award is certain and final on its face, no irregularity appearing, and no corruption or misbehavior of the arbitrator being shown, it is as conclusive on the parties and privies to the contract, upon the matters directly in issue, as if it were a judgment.

2. A. contracted with a city to construct certain engines for water works. The contract provided that they should be put in successful operation,

to the acceptance of a board of commissioners, by a specified date, under a penalty of $100 per day, to be deducted by the city as liquidated damages, for time beyond said date; that estimates should be made for finished work, and 80 per cent. paid monthly, the remainder on completion of the contract; that on failure to perform the conditions of the contract and due notice thereof by the mechanical engineer, the same should be declared void, A. should be liable for actual damages to the city, and in any case should forfeit the 20 per cent. retained by the city; and finally that "in case any question or dispute between the parties shall arise under this contract, or touching the quantity, quality or value of any work done thereunder, the same shall be referred to the mechanical engineer, whose decision shall be final and conclusive. And the said party of the second part hereby waives and releases all right of action and suit at law under or by virtue of this contract." When the work was partly completed the city complained that the materials used were not as specified in the contract, causing damage to the city, and that the workmanship was defective and not according to agreement; further, that the work was unreasonably delayed and not completed for several years after the time specified. After due notice to A. and demand of possession under claim of forfeiture, the city took possession of the engines, refused to make further payments for them and claimed damages. A. denied the allegations of the city and claimed that there were large sums due him on the contract, and for extra work. The contentions were submitted to the mechanical engineer, who after full hearing and testimony, decided that there was nothing due A.; that he had been fully paid for work done and materials furnished, and that he owed the city certain sums specified, by reason of his breach of contract in furnishing inferior iron and castings. The referee accordingly reported that A. should pay the city said sums; and on his refusal to do so, the city brought suit against B., the surety on his bond. *Held,*

(1) That the submission to the mechanical engineer was authorized by the terms of the contract above quoted.

(2) That said agreement for submission to the mechanical engineer was valid, and his award under it, as above set out, of binding force.

(3) That B., having had notice of the proceedings before the arbitrator and having appeared by counsel and practically controlled the proceedings on the part of the defence, the award was conclusive as to him, as well as upon A.

3. Although the record of a judgment against a principal, is not evidence to establish the debt against the surety in case of an unliquidated demand; yet *held,* that the agreement, conduct and active participation of the surety in the arbitration, took this case out of the rule.

4. Although an award, like a judgment, may be impeached for fraud, yet the fraud must be actual and not constructive. Partiality and some improper conduct on the part of the arbitrator in making the award will not impeach it, unless the party benefited thereby be implicated in the misconduct. General allegations of fraud without stating the facts which constitute them are not sufficient. There must be proof of fraud practiced on the arbitrator, or of mistake or accident by which he was deceived or misled, so that in fact the award was not the result of his own judgment.

5. Monongahela Navigation Co. *v.* Fenlon, 4 W. & S. 205; McGheehen *v.* Duffield, 5 Barr 497; Reynolds *v.* Caldwell, 1 P. F. S. 298; O'Reilly *v.* Kerns, 2 P. F. S. 214; Howard *v.* Allegheny Valley R. Co., 19 P. F. S. 489; Connor *v.* Simpson, 14 W. N. C. 315; Hartupee *v.* City of Pittsburgh, 1 Out. 107; Merricks' Estate, 5 W. & S. 9; Lamb

[Hostetter *v.* City of Pittsburgh.]

*v.* Miller, 6 Harris, 450; Giltinan *v.* Strong, 14 P. F. S. 242 Peterson *v.* Lothrop, 10 Casey 223—followed.

Snodgrass *v.* Gavit, 4 Casey 221; Rea's Appeal, 13 W. N. C. 546; Lauman *v.* Young, 7 Casey 306—distinguished.

October 23d, 1884.     Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, and CLARK, JJ.   PAXSON and GREEN, JJ.. absent.

ERROR to the Court of Common Pleas of *Beaver county:* Of October and November Term, 1884, No. 183.

Debt, by the city of Pittsburgh against David Hostetter, as surety on the bonds of Andrew Hartupee, who had entered into two contracts with the city of Pittsburgh for the erection of pumping engines to be used in supplying the city with water.

The conditions of the bonds were that Hartupee should " well and truly keep and perform all the terms and conditions of the said contracts on his part to be kept and performed."

The material parts of the contracts were as follows : " The said party of the second part agrees to furnish all labor and materials, construct, deliver and set up, at the proper engine-house, and upon the proper foundations to be erected on the grounds belonging to the city, on the Allegheny river, immediately above the mouth of Negley's Run, two graduating double cylinder plunger pumping engines, each of the dimensions, designs and materials explained and exhibited in the accompanying specifications, and in the drawings to which they refer, with the attachments and appurtenances therein described . . . . . The two pumping engines shall be in all respects completed and ready for the service required of them, on or before the 15th day of November, Anno Domini one thousand eight hundred seventy-four.

The party of the first part agreeing to furnish sufficient foundations, in accordance with the requirements of the above mentioned plans, on or before the first day of July, 1874. . . . . . On condition of the true and faithful performance of all the requirements of this agreement and the specifications hereto annexed, the said party of the first part hereby agrees to pay to the said party of the second part the sum of three hundred and seventy-five thousand dollars,* in full payment of all the work, labor, materials and supplies in this contract and the specifications hereto annexed, embracing the perfect and satisfactory construction of the machinery. . . . . .

And it is further agreed by the parties to this contract, that the mechanical engineer of the board of water commissioners

* In other contract $423,500.

shall make approximate monthly estimates for all iron work or composition work completed, and that payments shall be made of eighty (80) per cent. only of the amount of said monthly estimates: provided that such monthly payments on account shall at no time exceed in the aggregate the amount of the bond given by the said party of the second part, and the said engineer shall, at the same time, certify that the work is progressing faithfully and to his satisfaction.

After the faithful erection of the engines to the satisfaction of the engineer, and after their satisfactory action, and their accomplishment of the conditions required, the party of the second part, on the certificate of the said engineer, shall be paid the balance due on this contract, with the exception of ten (10) per cent., which shall be retained until after the term of probation already mentioned.

At the end of said term, on the certificate of said engineer of the faithful completion of this contract, the said party of the second part shall be paid whatever balance may be owing them. . . . . . And the said party of the second part hereby further agrees that the party of the first part shall be, and is hereby authorized to deduct and retain out of the moneys which may be due or become due to the said party of the second part, under this agreement, the sum of $100 per day as liquidated damages for each and every day the aforesaid work may be uncompleted, over and above the time herein stipulated for its completion; provided that said board of water commissioners, by and with the consent of said party of the second part, shall have the right to extend the time for the completion of said work, by resolution to that effect, and indorsing on this agreement. . . . . . And it is hereby expressly understood and agreed, by and between the parties to this contract, that the board of water commissioners of the city of Pittsburgh, as agents of the party of the first part, reserves to itself the power to suspend the execution of this contract, and to annul the same, whenever the other contracting party hereto fails to comply with the terms, or any of the terms of this contract, or with the proper directions of said board, in relation thereto; and that such suspension or annulment shall not affect the right of the city to recover any damage from such failure.

In case of forfeiture of this contract, under any of the instances above mentioned, or in case of failure to perform and satisfy the other conditions and obligations of this contract, due notice shall be given to the said party of the second part accordingly, by the mechanical engineer of said commission, and the contract and agreement may then be declared null and void; and the said party of the first part may in

such case, at their discretion, contract with other parties for the delivery or completion of all or any part of the work left uncompleted by the said party of the second part, or for the correction of the whole or any part thereof.

In case of such failure to perform the contract, the said party of the second part shall become liable for any damages caused the said city of Pittsburgh by reason of said non-performance; and shall besides, and under any circumstances, forfeit to the said city the amount of twenty per cent. above mentioned, or of any other moneys which may be held in reserve by the said party of the first part. . . . . .

It is hereby further agreed, that in case any question or dispute between the parties shall arise under this contract or touching the quantity, quality or value of any work done thereunder, the same shall be referred to the mechanical engineer, whose decision shall be final and conclusive. And the said party of the second part hereby waives and releases all right of action and suit at law under or by virtue of this contract."

After the work was partly completed the city complained that the quality and strength of the materials used were not such as the contract called for, by reason of which numerous breakages ensued resulting in great loss to the city; that the workmanship was inferior, and that the work was unnecessarily delayed, not being completed for several years after the time called for in the contract. Accordingly after due notice to the contractor and demand of possession, under claim of forfeiture, the city took forcible possession of the work in an unfinished condition, refused to make further payments and claimed damages.

The contractor denied these allegations and claimed that the delays were occasioned by the city's failure to have the foundations ready, and its numerous changes of plan; that he had replaced the broken parts at his own expense and that there were large sums due him on the contract and for extra work.

The facts in dispute were then submitted to the mechanical engineer, who after a hearing, and consideration of the testimony, reported that the contractor had been fully paid for all the work done by him; and further that he owed the city on each contract, a sum named, by reason of his breach of contract in furnishing defective materials and in doing imperfect work—which sums the engineer reported the contractor must pay the city.

This suit was against Hostetter, as surety on the contractor's bonds, to recover the sums indicated in the mechanical engineer's award.

On the trial, before HICE, P. J., the plaintiff offered in evidence the record in the case of Hartupee *v.* The City of Pittsburgh (reported in 1 Out. 107), which was a suit by the contractor against the city to recover the sum which he claimed to be due him on his contract, as above set out. This, in order to show what the matters in dispute under the contract were; and for the same purpose plaintiff offered the testimony taken in said case. Both offers objected to as irrelevant to the present issue. Objections overruled and testimony admitted. Exceptions. (First and second assignments of error.)

Plaintiff then offered the testimony taken before the mechanical engineer, and also the arguments of counsel in that proceeding, for the purpose of showing—(1) "What the questions in dispute between the city and Hartupee were, prior to the reference;" (2) To show that Hostetter, the present defendant, "employed counsel, who appeared before the mechanical engineer and cross-examined witnesses and introduced testimony in his own behalf—all the testimony taken before mechanical engineer Joseph L. Lowry, acting under the contract of September 4th, 1873, as referee." Objected to as irrelevant. Objection overruled and testimony admitted. Exception. (Third and fourth assignments of error.)

Plaintiff also offered the decision and award of said mechanical engineer. Objected to by defendant:

(1) "Because there is no evidence of any dispute between said parties as to which the mechanical engineer had jurisdiction."

(2) "Because under the contract, as a matter of law, the jurisdiction of the mechanical engineer related only to questions of quality, quantity and value as a condition precedent to payment by the city to its contractor."

(3) "Because under the contract, as matter of law, the jurisdiction of the mechanical engineer did not extend to the decision of any questions as to the city's right against the contractor for damages."

(4) "Because under the contract, as matter of law, the mechanical engineer had no jurisdiction as to the matters which, upon the face of the award, appear to have been passed upon by him."

(5) "Because the defendant is not bound by any of his undertakings as bondsman by any decisions of the mechanical engineer, except possibly in so far as the same is a condition precedent of payment to the contractor."

(6) "Because the award is void in law for the reason that it was not competent for the parties to the contract to oust

the ordinary tribunals of jurisdiction of matters of dispute not existing at the time the contract was made."

BY THE COURT. "We believe that, giving a fair, reasonable construction to the contract between the plaintiff in the case and Andrew Hartupee, the contractor, that the purpose and effect of the contract was to constitute the mechanical engineer of the city of Pittsburgh an arbitrator to pass upon questions that might arise under the contract of September 4th, 1873, between plaintiff and Hartupee, and that he had jurisdiction to hear and determine those questions. That the questions submitted to him as shown by this award were questions competent for him to pass upon, and that he has passed upon them, and this conclusion we believe is also in accord with the rulings of our own courts." Evidence admitted. Exception. (Fifth assignment of error.)

The defendant offered to show, by calling Hartupee and others :

" That the said engines mentioned in the contract were constructed according to specifications contained in letters patent of the United States, granted to the said mechanical engineer and according to the plans and designs prepared by the said mechanical engineer, and that said machinery was constructed by the contractor under the personal supervision of the mechanical engineer, and that all material defects of said machinery were the result of improper propositions and designs and relative parts in said machinery, and not by the use of bad material or imperfect workmanship on the part of contractor.

" This, as tending to show fraud in the making of the award, not alone from inconsistent declarations of the mechanical engineer and a contradiction of his findings by the facts, but also for showing motives for fraudulent finding upon the part of the mechanical engineer." Objected to. Objection sustained and evidence excluded. Exception. (Ninth assignment of error.)

Defendant also offered to show : " That when the award was made there was unpaid to the contractor, under the terms of the contract, and according to certificates of the mechanical engineer given during the progress of the work, the sum of $69,405.04, and other moneys for work done under the contract and not certified to, amounting to the sum of $30,000 ; and also moneys for extra work amounting to about $25,000 ; and that said mechanical engineer, in his award, forfeited all these moneys and charged the contractor in addition, as damages, with the cost of all material and work which he alleged to be defective, amounting to $174,000. That according to the estimates and certificates of the mechanical engineer already

furnished, the work done under the contract was of the value of $347,027.73; that the aggregate amount paid to the contractor was $277,622.18, leaving in the hands of the city $69.405.54; that the mechanical engineer officially reported to the city both before and after the making of his award, that all alleged defective work could be replaced for a sum less than the aforesaid sum remaining in the city's hands; that all said alleged defective work has been replaced, and that a balance still remains in the hands of the city of the moneys certified by the engineer and unpaid to the contractor; that under the terms of the contract the city of Pittsburgh obligated itself to furnish foundations whereon to erect the engines contracted for on or before the first day of July, 1874, and to furnish to the contractor from time to time, as required, detailed drawings of all the principal parts of the machinery to be constructed; that the erection of said engines could not be proceeded with until said foundations were furnished, and said machinery could not be made until said drawings were furnished; that said foundations were not furnished until the 24th day of April, 1875, and that said drawings of many of material parts of the said machinery were not furnished until 1876 and 1877, and the last not until April 12th, 1878, all of which facts were well known to the mechanical engineer at the time when he made his award.

" That notwithstanding these facts and this knowledge, the said mechanical engineer in the said award charges the said contractor with damages at the rate of $100 per diem for the period covered by the delay caused by said mechanical engineer in the failure to furnish foundations and plans as aforesaid; that during the progress of the work the same was inspected by the mechanical engineer and his agents, and each and every item thereof estimated by said engineer, and certified by him to be satisfactory.

" That in his award he condemns and charges the contractor damages for work estimated by him (the engineer) as satisfactory, upon the ground of alleged defects, and this without any information as to quantity or value of said work gained after said original inspection certificate and estimate."

All this " for the purpose of showing mistake of law on the part of the mechanical engineer, and as evidence for the jury of actual *fraud* on the part of the said engineer in the making of the award." Objected to. Objections sustained and evidence excluded. Exceptions. (Tenth, eleventh, twelfth and fourteenth assignments of error.)

In the general charge the court instructed the jury, inter alia, as follows:

" These disputes and questions that were thus to be sub-

mitted to him, as we understand the contract, and as we instruct you, were not merely disputes in relation to the quantity, quality or value of the material, but the jurisdiction of the mechanical engineer, under the agreement, extended beyond this. The language of the provision is this, 'It is hereby further agreed that in case any question or dispute between the parties arise under this contract or touching the quantity, quality or value of any work done thereunder, the same shall be referred to the mechanical engineer, whose decision shall be final and conclusive, and the said party of the second part' (Mr. Hartupee) 'hereby waives and releases all right of action or suit at law under and by virtue of this contract.'

" You will observe that under this provision they establish a tribunal, as it were, that should pass upon all questions of dispute that might arise between and determine them so far as they were under this contract. . . . . .

" It would seem from the evidence that not only Mr. Hartupee appeared before the arbiter in pursuance of this notice served upon him, but that notice was also given to his sureties, and that they with their counsel appeared there and took part in the proceedings, cross-examined witnesses, introduced testimony and argued the case to the referee. . . . . .

" If we were right in admitting this award (as we believe we were), then, we say to you that the plaintiff has made out a case; that it establishes the fact that there were breaches of this contract on the part of Mr. Hartupee, the principal, and breaches for which Dr. Hostetter, as surety upon his bond, is liable.

" We say further to you that this award (unless it be properly impeached) unless it be attacked in such a way as to show that it is not a valid award, and should not therefore be sustained, is binding upon the defendant in this case. It is conclusive upon him. . . . . . As the case now stands, it simply narrows itself down to this: Here was a contract by which Mr. Hartupee, the contractor, undertook to do certain work, and do it in a certain way, and make it of certain materials. For the faithful performance of that contract he gave his bond with sureties, one of those sureties being the defendant in this case. In that contract it was agreed that all matters in variance between them should be submitted to a certain party designated as a referee or arbiter, and that his decision should be final and conclusive as between them. Matters in variance —questions in dispute—arose between them. These were submitted to this arbiter in pursuance of this provision of the contract, and he has found that there were breaches, and has assessed the damages.

" This we conceive to be in accord with the contract; that

he had power to consider and determine these questions, and to award as he has done. This, as between Mr. Hartupee, the contractor, and the city, is binding and conclusive upon him, and having found that there were breaches of this contract, that he failed to perform and fulfil its terms, then we say to you, that under their bond the liability of the surety arises, and that the finding of the referee, the mechanical engineer, is binding upon him also, unless it is shown that that award was in some way defective. In this way, as remarked before, we have had various offers to show that it was defective, that it was not a valid award, and this upon various grounds, but none of these offers, as we conceive, were sufficient. Therefore this award stands before you unimpeached, and you would have, as we can see, but one duty in this case, and that is to find a verdict in favor of the plaintiff for the sum claimed, to wit, $174,000, together with interest upon that sum from the date of the award, the 31st day of July, 1882, to the present time.

"The form of your verdict should be for the penal sum of the bond, $375,000, to be released on the payment of the amount of your verdict." (Sixteenth, seventeenth, eighteenth, nineteenth and twenty-fourth assignments of error.)

Verdict for plaintiff for $375,000, to be released on payment of $190,240, and judgment thereon. Whereupon the defendant took this writ, assigning for error the admission and refusal of evidence, as above set out, and that part of the general charge of the court, cited.

*John Dalzell* (with whom were *Jacob F. Slagle, A. H. Clarke & John Barton*), for plaintiff in error.—Having refused to permit the defendant below to show that the contingency in which the engineer's right to make an award at all had never happened, the court below admitted the award in evidence, and held it conclusive against the contractor's surety, the defendant below. In this there was manifest error, for the following reasons:

(*a*) The jurisdiction of the engineer as arbiter extended only to "questions or disputes" between the city and its contractor "touching the quantity, quality or value of work done under the contract." It did not extend to the decision of questions of law and fact arising under the contract generally.

All the cases in which the engineer's authority has been upheld, are cases where there was a dispute relative to the amount, character or quality of the work done: Lauman *v.* Young, 7 Casey 309; McGovern *v.* Bockius, 1 W. N. C. 557.

(*b*) His power extended only to the decision of questions

and disputes so far as they related to *payment to the contractor;* it did not extend to determining that anything should be paid *by the contractor to the city.*

The principle as expressed in the Pennsylvania cases is— that the arbiter's valuation becomes a *condition precedent* to recovery: Monongahela Navigation Co. *v.* Fenlon, 4 W. & S. 205; Faunce *v.* Burke & Gonder. 4 Harris 469; Snodgrass *v.* Gavit, 4 Casey 221; Lauman *v.* Young, 7 Casey 306; Herdic *v.* Bilger, 11 Wr. 60; Reynolds *v.* Caldwell, 1 P. F. S. 298; Quigley *v.* DeHaas, 1 Norris 267.

(*c*) Even if both the city and the contractor had agreed to refer to the engineer all questions or disputes that might arise between them under the contract, it would not have been in their power to do so. Such an agreement would have been void as contrary to public policy, and could not have ousted the jurisdiction of the courts: Rea's Appeal, 13 W. N. C. 546; Gray *v.* Wilson, 4 Watts 39; Mentz *v.* Armenia Fire Ins. Co. 29 P. F. S. 478, and notably of Morse *v.* Ins. Co. 20 Wallace 445; Hart *v.* Hart, L. R. 18 Ch. Div. 670; Condon *v.* South Side R. R. Co., 14 Gratt. 302; Scott *v.* Avery, 36 Eng. L. & Eq. 1; Canal Trustees *v.* Lynch, 5 Gilman 521; Wallace *v.* Curtiss, 36 Ill. 156.

(*d*) In any event the engineer's award against the principal debtor was not evidence against the surety. Even a judgment would not be such evidence: Freeman on Judgments, § 180; Giltinan *v.* Strong, 14 P. F. S. 247; Jackson *v.* Griswold, 4 Hill 522.

(*e*) The award, even if evidence against the surety, was subject to be impeached and set aside by proof of fraud or mistake. On the question of fraud "any testimony having any bearing, however remote, is admissible;" and in impeach ing an award, fraud or mistake may be inferred, inter alia, from outrageous error, excessive damages, and manifest pal pable injustice: Zerbe *v.* Melley, 4 Harris 495; Heath *v.* Page, 13 P. F. S. 126; Woods *v.* Gummert, 17 P. F. S. 137; Baker *v.* Crockett, Hardin (Ky.) 389; Van Cortlandt *v.* Underhill, 17 Johns. 405; Vallance *v.* Life Ins. Co., 42 Pa. St. 441; Craver *v.* Miller, 65 Pa. St. 456; Loucheim *v.* Henszey, 77 Pa. St. 305.

*D. T. Watson* and *George Shiras, Jr.* (with whom were *W. C. Moreland & W. S. Pier*), for defendant in error.—Under the disputed clause in the contract the mechanical engineer was made not only judge of questions of fact, but also of all questions of law, including the construction and meaning of all clauses of the contract necessary to the decision of disputes. This was distinctly ruled in Connor *v.* Simpson,

8 Out. 440. The engineer, having jurisdiction, his award was admissible in evidence in this suit; and like the judgment of a court of co-ordinate jurisdiction, was conclusive between the parties upon the same matters of dispute : Merrick's Estate, 5 Watts & S. 9; Darlington *v.* Grav, 5 Wharton 487; 2 Smith's Leading Cases 781, 801; 2 Wharton's Evidence, § 800 ; Lamb *v.* Miller, 6 Harris 450. The surety appeared before the arbitrator and made defence, and was thus concluded by the award, even though he was not a necessary party to the issue: Heller *v.* Jones, 4 Binney 61 : Kinnersley *v.* Orpe, 2 Douglass 517 ; Masser *v.* Strickland, 17 S. & R. 358 (GIBSON, C. J., dissenting opinion) ; Lovejoy *v.* Murray, 3 Wall. 18. The appellant's offers to prove fraud were properly excluded from the jury, for they neither alleged fraud in any act of the engineer as arbitrator, nor showed facts fraudulent in themselves. They were mere isolated acts of the engineer outside of his sphere as arbitrator, and not inconsistent with his honesty in making the award.

Chief Justice MERCUR delivered the opinion of the court, January 5th, 1885.

This judgment was recovered against the plaintiff in error on his bonds as surety of Hartupee. The latter had contracted to build for the city of Pittsburgh, certain graduating plunger pumping engines, according to the terms of two contracts between them. Each bond was conditioned that Hartupee should " well and truly keep and perform all the terms and conditions of the said contract on his part to be kept and performed."

The contracts and specifications designated the quality and strength of the iron to be used, and provided that the whole machinery should be constructed in a neat, substantial and workmanlike manner, and be put in successful operation to the satisfaction and acceptance of the board of water commissioners by a day specified. It was further agreed that the city might deduct and retain out of the moneys which may be due or become due to said Hartupee under the agreement, the sum of one hundred dollars per day, as liquidated damages for each and every day the work might be uncompleted beyond the time stipulated for its completion.

Monthly estimates should be made for all iron and composition work completed, and eighty per cent. thereof be paid monthly, and the residue be paid on the completion of the contract. The agreement further stipulated that in case of a failure to perform the conditions and obligations of the contract, and due notice thereof by the mechanical engineer, the contract might be declared null and void ; and further, in

[Hostetter v. City of Pittsburgh.]

case of such failure to perform the contract, the said Hartupee should become liable for any damages caused the said city by reason of said non-performance, and besides, under any circumstances, should forfeit to the city the twenty per cent. retained out of the monthly estimates, or of any other moneys held in reserve by the city. It was expressly agreed "in case any question or dispute between the parties shall arise under this contract, or touching the quantity, quality, or value of any work done thereunder, the same shall be referred to the mechanical engineer whose decision shall be final and conclusive. And the said party of the second part hereby waives and releases all right of action and suit at law, under or by virtue of this contract."

When the work was partially completed the city complained that the iron and materials used were not of good quality nor of the strength stipulated in the contract: that they were of such defective materials as to have resulted in numerous breakages, thereby causing great loss and damage to the city; also that the workmanship was inferior and defective, and not according to the agreement.

It further alleged that the work was unreasonably delayed, and was not completed at the expiration of several years after the time stipulated for its completion. After due notice to the contractor, and demand of possession, under claim of forfeiture, the city took possession of the works in an unfinished condition, refused to pay for them and claimed damages. The contractor denied the claims and allegations of the city; and claimed there were large sums due him on the contract and for extra work. The contentions were submitted to the mechanical engineer, who after a full hearing and consideration of the testimony, and of all the claims on each side, decided and reported that there was nothing due to the contractor, that he had been fully paid for all work done and materials furnished, and above this he owed and was indebted to the city on each contract in a certain sum which he named, by reason of his breach of the contract in furnishing inferior and improper iron and in making defective castings, neither of which was in accordance with the terms of the contract, and said referee therefore adjudged that said Hartupee owed and should pay said sum to the city of Pittsburgh. This suit was for the recovery of the sums thus awarded.

It is contended by the plaintiff in error that this submission is not authorized by the language of the agreement.

The clear and comprehensive words therein answers this question. They are 1st, "any question or dispute" between the parties that "shall arise under this contract" shall be so referred. This language is very broad. It is not restricted

to questions of disputed fact, nor to questions of disputed law, arising on the contract, but includes both. 2d. It proceeds, disjunctively, " or any question or dispute that shall arise touching the quantity, quality or value of any work done thereunder " shall be referred to the same person. The reasonable and manifest meaning and sense of " under," in the connection in which it is used, is " the subject of" or " covered by " the contract. This is not only the plain and palpable import of " under," but it corresponds with the meaning of the word as given by both Worcester and Webster. As further indicating an intention that all questions of dispute that might arise connected with the subject matters of the contract should be so submitted, Hartupee waived and released all right of action and suit at law " under or by virtue of this contract; " that is, arising from or based upon its force, power and effect. The language clearly proves an agreement that all questions of dispute between the parties, which should arise on the contract, should be referred to the mechanical engineer, and that his decision should be final.

2. Is such an agreement valid, so that an award made under it shall be of binding force?

In Monongahela Navigation Company *v*. Fenlon, 4 W. & S. 205, it was held, when the parties to an executory contract stipulate that any dispute which shall arise between them on the subject of the contract shall be determined by an individual named, whose decision shall be final, no action will lie for a breach of the agreement by one against the other: but they must resort to the tribunal appointed by themselves, from whose award there is no appeal. In that case as in the present case the agreement was that the decision of the engineer should be conclusive. The agreement was held valid although the engineer was interested as a stockholder of the company. The binding effect of a similar agreement to refer to a person named all questions which may arise on an executory contract is affirmed in McGheehen *v*. Duffield, 5 Barr 497; Reynolds *v*. Caldwell, 1 P. F. Smith 298; O'Reilly *v*. Kerns, 2 Id. 214; Howard *v*. Allegheny Valley Railroad Co., 19 Id. 489; Connor *v*. Simpson, 8 Out. 440. This last case arose on an agreement to grade a portion of a railroad bed. It contained a clause appointing the chief engineer of the railway company a common arbiter to whom all and every question of difference between the parties growing out of the contract should be referred, and whose decision should be final and binding on both parties. The contractor entered on the work, and for some reason abandoned it in an unfinished condition, whereby the company claimed damages. It

was held, although the submission was prospective, yet it was special and to the arbitrament of a person designated, and was binding on the parties. In Hartupee v. City of Pittsburgh, 1 Out. 107, we considered the very contract now before us. We then held, as to all questions covered by the agreement, neither party could maintain a common law action without a previous arbitrament of the engineer, or an offer by one and a refusal by the other to so refer.

It is contended by the plaintiff in error that the present agreement is invalid under the ruling in Snodgrass v. Gavit, 4 Casey 221. The agreement then in question did not provide for submitting matters in dispute to any particular person or official named, but to three persons to be mutually chosen by the parties. This distinction was there made. It was distinctly affirmed that when parties stipulate that disputes, whether actual or prospective, shall be submitted to the arbitrament of a particular individual or tribunal named, they are bound by their contract, and cannot seek redress elsewhere.

The principle involved in Rea's Appeal, 13 W. N. C., 546, does not apply to the present case. That was not on an agreement to submit disputed questions relating to performance, or of damages arising on the contract, and between the parties thereto; but it was to provide for a final decree of a distribution of the fund between parties who were not legal parties to the agreement. The trustee was not entitled to any share in the distribution. Its purpose was not to settle the sums due as between the parties, but to make a final decree of distribution. It was therefore held the trustee could not set up the agreement so as to take away the jurisdiction of the courts.

Lauman v. Young et al., 7 Casey 306, is perhaps a stronger case in favor of the view of the plaintiff in error, yet it does not profess to overrule Monongahela Navigation Co. v. Fenlon, supra, and kindred cases, but distinctly affirms them to be correct. It does not deny the law to be as therein stated; but it is ruled on the language of the agreement which the court construed to limit the submission to the specific matters named. While we may think that construction rather forced, yet it in nowise controverts the rule of law, so often declared as to the binding effect on all matters of dispute which come within the prospective submission. There was no stipulation in that agreement by which either party waived and released all rights of action under or "by virtue of the contract," as there is in the present case.

We have shown the earlier, as well as the later, authorities clearly and distinctly hold that when a contract for the con-

11 OUTERBRIDGE.—28

struction of work contains a stipulation that all questions of dispute arising thereon shall be submitted to a person named for final decision, that it is a bar to a common law action therefor.

The evidence clearly establishes that the questions submitted to, and decided by the mechanical engineer in the present case were within the letter and spirit of the agreement authorizing the submission. Hartupee was duly notified of the time and place of hearing. He appeared by counsel, and was heard fully and at length.

The award on its face is certain, final and mutual. There is no apparent mistake in law or in fact. No irregularity in the examination of witnesses, nor in the conduct of the arbitrator, appears. No corruption or misbehavior of the arbitrator is shown. The award then is as conclusive on the parties to the agreement, upon the matters then directly in issue, as if it was a judgment: Whar. on Evidence § 800 ; Merrick's Estate, 5 W. & S. 9 ; Lamb *v.* Miller, 6 Harris 450.

3. It is further contended that if the award be conclusive on Hartupee, it is not on the surety. Why not? He was duly notified of the time and place of hearing, and that he might attend the hearing and take part therein if he saw proper. He appeared personally and by counsel. Thus he had an opportunity to be heard, and was heard at length. He was directly interested in the questions being tried and in the award to be rendered. He had a right to make defence to the claims of the city, and did so, and he controlled the proceedings on the part of the defence. He had the right to adduce testimony, and to cross-examine witnesses of the other side. He availed himself of all the rights of a party in the trial.

Hartupee had agreed, in case of his failure to perform the contract, that he should be liable for any damages the city might sustain by reason thereof. The surety had agreed that Hartupee should " well and truly keep and perform all the terms and conditions of said contract." The contract provided that any question or dispute between the parties, that should arise under it, should be referred to the engineer, whose decision should be final. The surety became bound for the fulfilment of every part of the contract. The manner of ascertaining the measure of disputed damages, and all other questions arising thereon, was a part of the contract. He was bound for the acts and omissions of his principal in the contract: Giltinan *v.* Strong, 14 P. F. S. 242.

The award of a referee duly appointed is as conclusive on parties and privies as is a judgment: Whar. Ev., supra ; Greenleaf Ev. § 524. The surety became substantially a party on

the trial before the referee, and a privy to the award. A court looks beyond the nominal party, and treats as the real party one whose interests are involved in the issue, and who conducts and controls the action or the defence, and holds him concluded by any judgment which may be rendered: Peterson et al. *v.* Lothrop, 10 Casey 223. When there is full opportunity, by notice or otherwise, to come in and to adduce evidence and cross examine, then the judgment is a bar, even when the persons having this opportunity are not parties to the record: Whar. on Ev. § 763. While a recovery in eject-ment against a covenantee is not evidence of the defect of his title against the covenantor unless the latter had notice, yet if he had notice, and especially if he defended the suit, it is conclusive: Leather *v.* Poultney, 4 Binn. 356; Bender *v.* Fromberger, 4 Dall. 436; Coates *v.* Roberts, 4 Rawle 100; Chambers *v.* Lapsley, 7 Barr 24. The rule that the real party in interest will be bound by the judgment, although not named, is further held in Kinnersley *v.* Orpe, 2 Doug. 517; Castle *v.* Noyes, 4 Kernan 329; Rogers *v.* Haines, 3 Greenleaf 362; Mehaffy *v.* Lytle, 1 Watts 314.

It is urged that the surety could not appeal from the award. That is true: but as his principal could not appeal, the rights of one in that respect were equal to the rights of the other. The agreement for which the surety became bound waived that right. It follows this award was as conclusive against the surety as against the party named therein.

It is not necessary to refer to the authorities which hold that the record of a judgment against the principal is not evidence to establish the debt against the surety. This may be conceded to be the general rule in the mere case of a surety for an unliquidated demand. It, however, does not apply here where the agreement, conduct and active partici-pation of the surety in the award take the case out of that rule.

The award, like a judgment, may undoubtedly be impeached for fraud, which avoids all judicial acts. The fraud, however, must be actual and intentional, and not constructive, such as flows from an erroneous or unjust judgment. Partiality and some improper conduct of the arbitrator in making the award will not impeach it unless the party benefited thereby be implicated in that misconduct: Braddick *v.* Thompson, 8 East, 344. The award of a referee to whom questions of law and of fact are submitted cannot be impeached and avoided unless by proof of fraud practised on him, or by proof of mistake or accident, by which he was deceived or misled so that in fact the award is not the result of his own judgment. A mistake in drawing conclusions of fact from evidence, or in

adopting erroneous rules of law, does not avoid the award: Boston Water Power Co. *v.* Gray, 6 Metcalf 131.

Loose and general allegations of fraud without stating the facts which constitute the fraud are not sufficient: The Jurist N. S., 3 Pt. 1, 58 (Bainbrigge *v.* Moss). Even when an account is sought on the ground of fraud, it is not sufficient to make . such a charge in general terms, but it must be pointed, and state particular acts of fraud: Bright. Eq. Juris. § 57; Bisp. Eq. § 217; Clarke *v.* White, 12 Peters 178; Marr's Appeal, 28 P. F. S. 66.

It is not claimed that the city was guilty of fraud in obtaining the award. There was no offer to prove any particular act of the city tending to prove fraud. We have carefully considered all the offers of evidence as made. There is either an omission to aver sufficient facts, or a blending of some improper evidence, so we think the learned judge committed no error in rejecting the several offers.

We consider it unnecessary to answer the specifications of error separately.

It will be seen by what we have already said that the case was well tried, and the judgment should not be disturbed.

Judgment affirmed.