### Lucas Coal Co., Limited, Appellant, v. Delaware & Hudson Canal Co.

*Contract—Terms to be strictly complied with.*

The contract between the parties is to be closely adhered to, and where it provides a method for determining price or value, such method must be observed.

A contract for the sale of coal provided a method for determining the price of the coal:

*Held,* that this method must be followed, and that plaintiff would not be permitted to give evidence of the market value of the coal delivered under the contract for the purpose of determining its price.

*Contract—Decision of inspector—Fraud.*

The contract provided that the coal delivered under its terms should be subject to the inspection of the superintendent of the coal department of defendant, or such persons as he might employ for that purpose, whose decision should be final and conclusive:

*Held,* that the decision of the inspector was binding upon the parties unless fraud be shown, which fraud must have been the result of collusion between the defendant and inspectors.

Argued Feb. 25, 1892. Appeal, No. 173, Jan. T., 1892, by plaintiff, from judgment of C. P. Lackawanna Co., March T., 1889, No. 46, on verdict for defendant. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Assumpsit to recover the price of coal sold.

At the trial before GUNSTER, J., the evidence was to the following effect: Plaintiff company being engaged in the business of mining and shipping coal, made an agreement with defendant to mine, prepare and deliver coal, at the rate of 100,000 tons annually, defendant agreeing to pay for each ton of coal the price per ton paid by the Delaware, Lackawanna & Western Railroad Co. to William Connell and others, in accordance with the terms of an agreement made between the railroad company and Connell and others on the first day of September, 1870. The provisions of this agreement relating to the price per ton were in substance as follows:

That when the average price paid by the Delaware, Lackawanna and Western Railroad Company, to the miners employed at their collieries, to wit: Diamond, Bellevue, Hampton and Continental, should be seventy and ninety-four hundredths cents per ton, as shown by the books and accounts in the coal agent's office at Scranton, the company should pay one dollar seventy-seven and twenty-three hundredths cents per ton for the coal delivered; but as often as the average price paid to the miners should be increased or decreased, the price to be paid to said Connell and others should be increased eight and one half cents per ton for every five cents per ton increase paid the miners, and decreased eight and one half cents per ton for every five cents per ton decrease paid the miners.

The agreement between plaintiff and defendant also provided that coal delivered under the agreement should be subject to approval by defendant's inspector.

Under the agreement plaintiff mined and delivered to defendant during the years 1883–4–5, 127,000 tons of coal, for which settlement was made monthly. In 1885 plaintiffs leased their colliery to the Union Coal Co., Limited, which company continued to deliver coal to the defendant. Subsequently the defendant purchased the colliery and all the interest of the Lucas Coal Co., Limited, and the Union Coal Co., Limited, in the same. In 1889 this suit was brought, plaintiff claiming $160,000 damages, and setting up that the inspection of the coal had been fraudulent, that defendants had refused to receive coal under the contract, that they declined to accept pea coal, and that the plaintiffs were obliged to sell their colliery to defendant at a smaller sum than its real value, and that the contract was illegal and a violation of the laws of the state of Pennsylvania.

The court below directed a verdict for defendant and judgment was entered thereon. Plaintiff appealed.

*Errors assigned* were, (1) refusal of evidence (*a*) as to refusal of Del., Lack. & West. R. R. to inform plaintiff as to payments made under Connell contract; (*b*) refusal of evidence to prove market value of coal; (2) refusal of evidence as to market value; (3–5) evidence as to fraud in inspection and rejection of coal; (7) evidence to show defendant a common carrier, etc.; (6, 8–10) evidence as to damage resulting from improper inspection and rejection; (11, 12) binding instructions for defendant; (13–16) sustaining demurrer to declaration; (17) sustaining demurrer to and striking out last count to declaration, which was as follows: "For coal mined and prepared for market, goods, chattels, and effects by plaintiff, sold and delivered to defendant by plaintiff."

*S. B. Price*, for appellant.

*W. H. Jessup*, of *Jessup & Hand*, for appellee.

PER CURIAM, March 28, 1892:

The specifications of error here are too numerous to discuss in detail, nor is it necessary. The attempt to prove the market value of the coal sold and delivered to the defendant at the time of delivery, very properly failed, for the reason, the price was fixed by the contract between William Connell and others, and the Delaware, Lackawanna & Western R. R. Co.,

offered in evidence. All the information needed, under that contract, could easily have been obtained by resorting to the usual legal remedies. The attendance of the officers or employees of the company could have been compelled by the process of subpœna. The production of the books and accounts of said company, so far as they affected the case, could have been compelled by a subpœna duces tecum, if taken out and served within proper time. There appears to have been no real attempt to procure this testimony. In its absence it was not error for the court to decline to admit evidence of the market value of the coal.

The offer to prove that a portion of the coal had been improperly condemned was properly rejected. It was stipulated in the contract between the parties that " all the coal delivered under this agreement shall be subject to the inspection of the superintendent of the coal department of the party of the second part, or such other persons as they may employ for that purpose, whose decision as to the quality of said coal, and the manner in which the same is cleaned and prepared, shall be final and conclusive." It will thus be seen that the parties agreed to submit this question to the decision of the inspector appointed by the defendant. His decision, under such circumstances, is final and conclusive, unless fraud be shown. And such fraud must have been participated in by the defendant company. In other words, the fraud must have been the result of collusion between the defendant and the inspectors appointed by him: Hostetter v. Pittsburgh, 107 Pa. 419 ; Hartupee v. Pittsburgh, 131 Pa. 535.

If, as was alleged in the 17th specification of error, the court below erred in sustaining the demurrer to the last count of the plaintiff's declaration, it is immaterial, for the reason that there was no evidence to sustain said count.

Judgment affirmed.