## Commonwealth ex rel. *v.* Pittsburg, Appellant.

*Municipalities—Municipal contracts  Decision of director of department of public works.*

Where a municipal contract provides that the decision of the director of the department of public works shall be final, conclusive and binding upon all parties, and the director signs and approves an estimate for the work done and materials furnished by the contractor, the estimate is conclusive upon the controller of the city, and he has no discretion to refuse to pay it. In mandamus proceedings against the controller to compel payment, he cannot successfully allege as a ground for refusal that the work was not done according to the contract; that it was improperly done in certain respects; that the doing of the work in the improper manner by the contractor was intentional, and that the director had notice of this before he approved of the work, but approved it notwithstanding.

MESTREZAT, J., dissents.

Argued April 28, 1903. Appeal, Nos. 64, 65, 66, 67 and 68, Oct. T., 1903, by John B. Larkin, from judgment of C. P. No. 2, Allegheny Co., Nos. 628, 629, 630, 631 and 632, Jan. T., 1903, in mandamus proceedings in case of Commonwealth ex rel. Mercantile Trust Company v. City of Pittsburg and John B. Larkin, City Controller. Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Petition for writ of mandamus. See Com. ex rel. v. Pittsburg, 204 Pa. 219.

From the record it appeared that on November 29, 1902, the court in an opinion by SHAFER, J., granted a writ of peremptory mandamus. Subsequently a motion was made to quash the writ on the ground that no notice had been given to the controller of the application for the writ. The court in an opinion by SHAFER, J., held that no notice was necessary to a public officer in a proceeding which concerned only the performance of public duties. He accordingly discharged the rule to quash. Subsequently on its being made to appear to the court that the controller had other reasons which he desired to present to the court as grounds for not countersigning the warrant, the court permitted the peremptory writ to be superseded, and allowed an alternative writ. Demurrers were filed to the returns of the several writs.

The courts sustained the demurrers, SHAFER, J., filing the following opinion :

These five demurrers to the return of several writs of alternative mandamus were argued together, and may be considered together; the writs being to enforce a countersigning of warrants for monthly estimates for as many amounts claimed to be due the relator, the first being for the month of May, 1902.

A similar proceeding was had as to the warrant for April, 1902, on which a peremptory writ was issued, and the judgment confirmed by the Supreme Court. Unless the present cases shall appear to be materially different from that case, they will be governed by it. Without repeating what has been said in the opinions heretofore filed in these cases, it is sufficient to say that the question really is whether or not any substantially new matter has been set up in these cases, additional to that which was before the Supreme Court in the case heard by it, and if so, what is its effect. So far as the relators' case is concerned, it is practically identical with that presented in the case already determined, except that each proceeding is for a different month and a different amount. If there is any difference, therefore, it must be found in the returns.

The first matter set up, not contained in the former return, is that the respondent, as controller, is not bound to countersign a warrant not already signed by the recorder, and that the warrants presented to him were not so signed. It may be that the controller might insist that a warrant duly signed by the recorder should be presented to him before he were called upon to countersign it; but where the refusal to sign was not based upon the absence of the recorder's signature, but for other reasons the respondent refused to sign any warrant, as in this case, it does not seem that the lack of the recorder's signature upon a warrant presented to the controller, or even the lack of the presentation of any warrant to the controller, would, under the circumstances, make any difference. The case seems to be analogous to that of a tender of money, where the refusal to receive any money excuses the production of legal tender.

In the former return it was alleged that the relators owed the city $100 a day under the contract for delay in finishing the work, and that the amount so owing was greater than the sum demanded in that proceeding. This is repeated in the

present return, with the addition that the amount is now $146,000, and that a resolution was pending in council directing that these damages should be retained and enforced. We cannot see any real difference between the two allegations of the returns. If the existence of the penal clause in the contract, and the fact that the amount incurred under it exceeded the amount claimed was not an answer to the former writ, it is none to this. Nor can we see that the resolution in question can alter the relators' rights.

In the return in the former case it was alleged that the work was not done according to the contract, although it was not pointed out in what respects it was not so done. In the present return various particulars are pointed out in which the work done is said to be different from, and inferior to that required by the contract. This, we conceive, however, makes no difference, for if the director of public works is the arbiter, his decision cannot be impeached by declaring him to have made a mistaken or untrue certificate, whether the allegations are general or specific. It is further alleged that the reservoir is now completed, or supposed to be so, and that water has been turned into it, and that it leaks very badly. This also appears to us to be beside the question, as it does not appear by the contract that the relators guaranteed to make a reservoir that should not leak, but only one that should be built according to the plans and specifications. The returns also contain a number of other allegations as to the injury that will be done to the city if the payments demanded are made, but all of them rest upon the allegations as to imperfect work, which in the face of the contract as to the powers of the director, the city and its accounting officer cannot allege against the relator.

The only additional allegations are those which relate to the knowledge of the director of public works that the work done was done in an inferior manner upon a corrupt bargain between the relator and the former incumbent of the office, and other allegations of like import, which together were claimed by the respondent's counsel upon the argument to amount to a charge of fraudulent conduct on the part of the director of public works, such as to render his certificate invalid. In the opinion filed on January 26, 1903, allowing the respondent time to correct and amend his return in this respect, it was pointed

out that in the original return no such fraud was charged, and we need not repeat what was then said. The respondent has since, under the leave so given, filed a correction or amendment to his return, the substance of which is that the director who is alleged to have made a corrupt bargain with the relator is not the same director who issued the estimate, but was one of his predecessors, but that the present director had notice of the corrupt bargain, and that he had notice that the work was done according to it; that a former director had condemned certain work and ordered its removal, but that it has not been removed; and that the present director, before making the estimates, had notice that the work was not done according to plans and specificrations, and that the failure so to do it was intentional on the part of the relator, and that the director either knew of the specific defects set out in the return, or was wilfully blind to them. Taking the allegation of the correction or amendment as additional to, and not a substitute for, the original return, and looking at them together, they amount substantially to the allegation that the work was improperly done in certain respects; that the doing of the work in this improper manner by the relator was intentional; that the director had notice of this before he approved the work, but approved it notwithstanding. In other words they say that the decision of the director was erroneous and unjust. As was decided in the case of Hostetter v. The City of Pittsburg, 107 Pa. 419, the fraud for which the decisions of an arbitrator may be attacked must be actual and intentional, and not constructive, or such as flows from an erroneous or unjust judgment; and further that such decisions cannot be " voided unless by proof of fraud practiced on him, or by proof of accident or mistake, by which he was deceived or msiled so that in fact the award ls not the result of his own judgment." If this were not the law it would be of little avail to refer questions of any sort to arbitrators, as the losing party commonly believes the award against him to be erroneous and unjust, and the arbitrator to have wilfully disregarded what he believes to be established facts.

We are therefore of opinion that nothing has been set up in return to these writs additional to what was set up in the case already decided, which furnishes a reason why the peremptory writs should not be issued.

The demurrers in each of the cases above named are therefore sustained, and it is ordered that judgment be entered for plaintiff and against the defendants in each of the said cases with costs, and that a peremptory mandamus issue in each of said cases as provided by law.

*Error assigned* was in entering judgment awarding a peremptory mandamus.

*George W. Guthrie* and *W. B. Rodgers*, for appellant.

*William A. Stone* and *H. L. Castle*, of *Stone & Stone*, with them *J. A. Langfitt*, for appellee.

OPINION BY MR. JUSTICE MITCHELL, May 25, 1903:

These judgments are affirmed on the opinion of the court below.

MESTREZAT, J., dissenting.

---

# Aspinall *v.* Viney, Appellant.

*Bill of exchange — Presentation—Delay — Negligence—Acceptance of notes—Lunacy.*

In an action against the administrator of the drawer of an order, it appeared that the plaintiff did not present the order to the drawees for some weeks, and that when he did so the drawees accepted it, but provided that it should not be paid until after the completion of a certain contract. The drawer wrote to the plaintiff suggesting that he should take notes from the drawee instead of relying upon the acceptance of the order. The plaintiff took the notes, which were never paid. There was evidence that the drawees were in failing circumstances during the whole course of the transaction, but the evidence was not definite as to whether the plaintiff knew this. There was also evidence that the drawer was insane at the time he wrote the letter to the plaintiff, but there was no evidence that plaintiff knew this. The court charged that plaintiff was bound to present the order "in what a prudent business man of reasonable intelligence would say was a reasonable time," and left the question of reasonable time to the jury. *Held,* that the instruction was proper.

Argued April 29, 1903. Appeal, No. 72, Jan. T., 1903, by defendant, from judgment of C. P. No. 4, Phila. Co., March T.,