COMMERCIAL UNION ASSUR. CO., Limited, v. DALZELL.

LONDON & LANCASHIRE FIRE INS. CO. v. SAME.

(Circuit Court of Appeals, Third Circuit. January 29, 1914.)

Nos. 1,792, 1,793.

1. INSURANCE (§ 612*)—FIRE POLICY—CONSTRUCTION—TIME TO SUE.

Where a fire policy provided that in the event of disagreement as to the amount of the loss the same should be fixed by appraisement, and that the award should "determine the amount of such loss," and that the company should pay the same within 60 days after due notice, ascertainment, estimate, and satisfactory proof of loss, no suit could be lawfully brought on the policy until the amount to be sued for had been so determined.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1520–1528; Dec. Dig. § 612.*

Conditions in policy as to time for bringing suit, see notes to Steel v. Phœnix Ins. Co., 2 C. C. A. 473; Rogers v. Home Ins. Co., 35 C. C. A. 404.]

2. INSURANCE (§ 574*)—FIRE POLICY—LOSS—AMOUNT—DETERMINATION BY ARBITRATION—CONCLUSIVENESS.

Where a fire policy provided that in the event of a disagreement as to the amount of the loss the same should be ascertained by two competent and disinterested appraisers, one to be selected by the insurance company and the other by the insured, and the two to select an umpire and together should appraise the loss, and the award in writing of any two should determine the amount of such loss, the award of the appraisers was conclusive on both parties and fixed the amount of the insured's liability.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1430–1432, 1434; Dec. Dig. § 574.*]

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Actions by John Dalzell against the Commercial Union Assurance Company, Limited, and against the London & Lancashire Fire Insur-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ance Company. Judgment for plaintiff in each case, and defendants bring error. Reversed.

Jennings & Jennings and S. S. & C. B. Mehard, all of Pittsburgh, Pa., for plaintiffs in error.

Richard H. Hawkins, of Pittsburgh, Pa. (Dalzell, Fisher & Hawkins, of Pittsburgh, Pa., of counsel), for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. These two cases were tried together in the District Court, and do not need separate attention here. They arise under the following circumstances:

In June, 1907, the plaintiff, who owned a large building in Wilkinsburg, Pa., insured it for $45,000 in several companies; each of the defendants writing a policy of $2,500. In March, 1908, a fire occurred, and much damage was done. A dispute arose immediately about the amount of the loss; the plaintiff asserting the damage to be nearly $35,000, and the defendants contending for a much lower sum. In such a situation, if we turn to the contract—as we must—in order to ascertain the rights of the respective parties, we find the following provisions:

The sum covered by the policy is not to exceed $2,500, and the company is not to be liable—

"beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality."

And, as disputes arise continually between insurer and insured concerning the amount of a loss, the policy goes on to provide:

"Said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers as hereinafter provided."

[1] The subsequent provisions thus referred to are as follows:

"In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage; and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the expense of the appraisal and umpire."

It will be observed that this award is to "determine the amount of such loss," and obviously no suit can be brought until the amount to be sued for shall be thus determined. And, indeed, the suit cannot be brought immediately, even after an award has been made; for in two places the policy expressly provides as follows:

" * * * And, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable in 60 days after due notice, ascertainment, estimate, and satisfactory

proof of the loss, have been received by this company in accordance with the terms of this policy.   *   *   *·

"An the loss shall not become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required, have been received by this company, including an award by appraisers when appraisal has been required."

[2] It will thus be seen that the office of the award is to determine the amount of the loss; for reasons not connected with the award, the company may not be liable at all, but if liable it must pay the amount thus determined. And this amount is binding upon both parties; they so agree, and of course they are bound by their contract.

Other preliminary conditions must also be complied with by the insured, before he can acquire a right to sue. Especially, he must give immediate notice of the loss—this is not in dispute, and need not be considered—and he must also—

"within 60 days after the fire, unless such time is extended in writing by this company, render a statement to this company, signed and sworn to by such insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the interest of the insured and of all others in the property, the cash value of each item thereof, and the amount of loss thereon, etc." (specifying what is usually required in proofs of loss).

As all these preliminary conditions are for the company's benefit, the company may waive them, and this possibility is expressly recognized in other clauses of the policy. One clause guards against the contingency that the mere fact of agreeing to an appraisement may be construed as a waiver:

"This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for."

And another clause attempts to ordain a particular method by which waiver is to be proved:

" *   *   * No officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto; and, as to such provisions and conditions, no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto."

After a right to sue has been acquired by the performance of the stipulated conditions precedent, the insured is required to sue within a specified time:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

Each policy was accepted subject to these stipulations and conditions; it is the voluntary contract of the parties by which they have chosen to be bound. Courts have differed concerning the effect of the condition concerning appraisal. The Supreme Court of Pennsylvania holds it to be revocable. Its position will appear by the following ex-

tract from the opinion in Commercial, etc., Co. v. Hocking, 115 Pa. 414, 8 Atl. 591, 2 Am. St. Rep. 562.

"It is undoubtedly true, when the parties to an executory contract agree that all questions of difference or dispute which may arise between them in reference thereto, or that the amount of any claim arising therefrom, shall be first submitted to the arbitrament of a single individual, or tribunal named, they are bound by their contract, and cannot seek redress elsewhere, until the arbiter agreed upon has been discharged, either by the rendition of an award, or otherwise. Monongahela Nav. Co. v. Fenlon, 4 Watts & S. (Pa.) 205; Connor. v. Simpson, 104 Pa. 440; Hostetter v. City of Pittsburgh, 107 Pa. 419. But it is equally true that where the agreement in question does not provide for submitting matters in dispute to any particular person or tribunal named, but to one or more persons to be mutually chosen by the parties, it is revocable by either party; and such a provision is not adequate to oust the jurisdiction of the courts having cognizance of the subject-matter of the dispute. Gray v. Wilson, 4 Watts (Pa.) 41; Mentz v. Armenia Fire Ins. Co., 79 Pa. 480 [21 Am. Rep. 80]; Hostetter v. City of Pittsburgh, supra."

See, also, Needy v. Insurance Co., 197 Pa. 460, 47 Atl. 739.

But the Supreme Court of the United States takes a different view. In Hamilton v. Insurance Co., 136 U. S. 242, 10 Sup. Ct. 945, 34 L. Ed. 419, the court said, in considering a policy, not essentially different from those now in question:

"The appraisal, when requested in writing by either party, is distinctly made a condition precedent to the payment of any loss, and to the maintenance of any action.

"Such a stipulation, not ousting the jurisdiction of the courts, but leaving the general question of liability to be judicially determined, and simply providing a reasonable method of estimating and ascertaining the amount of the loss, is unquestionably valid, according to the uniform current of authority in England and in this country. Scott v. Avery, 5 H. L. Cas. 811; Viney v. Bignold, 20 Q. B. D. 172; Delaware & Hudson Canal v. Pennsylvania Coal Co., 50 N. Y. 250; Heed v. Washington Ins. Co., 138 Mass. 572; Wolff v. Liverpool & London & Globe Ins. Co., 50 N. J. Law, 453 [14 Atl. 561]; Hall v. Norwalk Ins. Co., 57 Conn. 105, 114 [17 Atl. 356]. The case comes within the general rule long ago laid down by this court: 'Where the parties, in their contract, fix on a certain mode by which the amount to be paid shall be ascertained, as in the present case, the party that seeks an enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect. He cannot compel the payment of the amount claimed, unless he shall procure the kind of evidence required by the contract, or show that by time or accident he is unable to do so.' United States v. Robeson, 9 Pet. 319, 327 [9 L. Ed. 142]. See, also, Martinsburg & Potomac Railroad v. March, 114 U. S. 549 [5 Sup. Ct. 1035, 29 L. Ed. 255]."

Numerous cases to the same effect are collected in 4 Cooley, Insurance Briefs, 3597.

It thus appears that in the federal courts the insured is bound by the appraisal clause, and must do all that he can to carry it into effect. If an award is made, both parties are bound by it.

Having thus ascertained the rights of the parties under the policies in suit, let us see what was done. The fire occurred on March 10th, and the plaintiff gave notice thereof. A dispute arose at once about the amount of the loss, and on March 27th appraisers and an umpire were duly chosen. The appraisal agreement is in writing; it follows the policy strictly; provides that the appraisers shall ascertain, pursu-

ant to the terms and conditions of the policy, the sound actual cash value on March 10th and the actual loss or damage directly caused by the fire; declares that the award of any two "shall determine the amount of such loss"; lays down rules for ascertaining the loss; and provides that the appraisement—

" * * * does not in any respect waive any of the provisions or conditions of said policies of insurance or any forfeiture thereof, or the proof of such loss and damages required by the policies of insurance thereon."

The award was not made until June 13th, when the umpire and one appraiser determined "the actual damage * * * to be $27,524." Each company's share of this loss would be $1,720.25, while its share under the plaintiff's estimate would be $2,150.37. The difference is not large, but apparently it could not be adjusted. No proofs of loss had yet been filed, although more than 60 days had elapsed since the fire; but in this matter no fault appears on the part either of the plaintiff or of the company, and the company very properly did not set up the lapse of time as a bar to the plaintiff's claim. On the contrary, it was willing to accept proofs of loss in spite of the 60 days' provision; but it refused to accept them unless they conformed to the award on the subject of amount. The company's position was that the award was binding upon both parties as to amount, while the plaintiff took the opposite position and declined to be bound thereby. Accordingly, on June 25th he sent proofs to the company in which he ignored the award altogether, itemized the loss at $34,405.87, and claimed $2,150.27 from each of the defendants. The company insisted—and, as we think, correctly insisted—that the award must be complied with, and on July 3d (after acknowledging the receipt of the proofs) went on to say:

"The company declines to accept these as proofs, as they do not accord with the award of the appraisers, which is binding on both of us. Under this award the pro rata proportion due you from this company is $1,720.23, which we are ready and willing to pay you, and not $2,150.57. as claimed by you.

"If it shall be alleged or claimed by you that said award of appraisers for any reason is not binding upon you, than this company objects to the papers purporting to be proofs of loss, and declines to accept them for the reason that they were not served upon this company within 60 days after the fire as required by the terms and conditions of the said policy.

"The papers are returned herewith."

It is clear therefore that the only point in dispute between the parties was the effect of the appraisal, and, as we have already intimated, we think the company's construction of the contract was correct. There is no evidence, and indeed there is no contention, that the company ever waived this position. It was certainly entitled to insist that proofs of loss should be furnished. In strictness such proofs should have been offered within 60 days after the fire, but there was evidently good reason why this strict requirement should not—and perhaps it could not—be insisted upon. But in any event it is clear that the company did not insist upon it; on the contrary, it expressly agreed to accept proofs although the 60 days had passed, but it did stand by the position that these proofs must conform to the appraisal, since both parties had agreed to be bound thereby. Neither then nor thereafter was it obliged to accept proofs that paid no attention to the appraisal

210 F.—39

and insisted upon a different estimate of the damage, made up outside of the contract and in disregard of its provisions. There was no misunderstanding between the parties on this subject; the plaintiff was in no way misled or injured by anything that was done or said. He knew that proofs would be accepted, and that the loss would be paid, if he would agree to the amount awarded; but this he declined—as of course he had a right to do, but at his own risk—and in December of. the same year he brought suit in the state court, still claiming $2,150.27 from each defendant. (Four years later, he amended his claim by leave of the District Court, but, for reasons that will presently appear, we do not go into matters connected with the amendment.)

The trial judge submitted to the jury as "the sole question" on which the verdict must turn:

"Whether or not, it appearing that proofs of loss were not furnished by the plaintiff to the defendant companies within 60 days of the date of the fire, which was March 10, 1908, the defendant companies have waived that provision."

In our opinion there was no evidence of waiver to be submitted, and, to speak precisely, the real point is not a question of waiver at all. The question is one of law, arising upon a written instrument, and is not a question of fact. As we regard the case, it turns upon this: Did the policy require the plaintiff to conform to the appraisal in his proofs of loss? If the proofs he did file had conformed to the award and had otherwise complied with the policy, and if the company had insisted that these proper proofs were not offered in time, then of course it would be important to decide whether the company had waived the 60 days' limit. But we repeat, the company was objecting only to a particular aspect or item of the proofs themselves, and did not object to the lapse of time. It agreed to accept the proofs if they were changed in one specified particular; this had been the dispute from the beginning, and both parties knew all about it. The plaintiff's attitude was not altered in the least in consequence of anything that was done by the company. He merely continued to maintain his original attitude, and refused to make the only change that was pointed out as necessary. He never supposed that the company was waiving its position about the effect of the appraisal, and he never changed his own. The case of Astrich v. Insurance Co., 65 C. C. A. 251, 131 Fed. 20, is not in point, for the doctrine of estoppel does not apply, unless a plaintiff's position has been changed to his hurt. Even now it is not contended that the company ever relinquished the position that the appraisal was binding upon both parties, and therefore it seems unnecessary to prolong the discussion. The question submitted to the jury was not the point of the case, and upon the record before us the defendants were entitled to binding instructions in their favor.

We do not depreciate the importance of the other questions that are raised by the companies; but, as the matter we have discussed is fundamental, we do not even state them. We feel impelled, however, to express the hope that the parties may still settle this controversy on an equitable basis. The companies have already conceded—and have properly conceded—their liability in a certain amount, and the sub-

sequent dispute (no matter what its final result has been) should not be an impassible obstacle to an adjustment on fair and reasonable terms.

In each case the judgment is reversed, but without prejudice to the right of the plaintiff below to bring such other suit as he may be entitled to prosecute in whatever forum may have jurisdiction thereof.