## Patriotic Order Sons of America Hall Association, Appellant, *v.* Hartford Fire Insurance Co.

Argued May 27, 1931. Before Frazer, C. J., Walling, Simpson, Kephart, Schaffer and Maxey, JJ.

*James S. Woods* and *H. H. Waite,* with them *Chester D. Fetterhoof,* for appellant.—The actual cash value in a policy of insurance means what it would cost to replace a building or chattel, as of the date of a fire: Fedas v. Ins. Co., 300 Pa. 555, 562.

The courts have stated what sound value means in certain cases, and these are in two cases in which the question of the amount of loss did not occur, but where the appraisers had failed to make any report on sound value: Mason v. Fire Assn., 122 N. W. 427; Continental Ins. Co. v. Garrett, 125 Fed. 589.

The actual cash value for which the company is liable is specifically defined in the policy and is simply a question of indemnity, not to exceed the amount of the policy. The sound value is at the best condition value.

The definition of "sound value," as quoted above, does not make it the same as "actual cash value, with due allowance for depreciation," and it does not make it the same as "actual cash value" used in the rider.

The appraisers should be allowed to state what they meant by "sound value" as assessed by them in their appraisal, and to state that it did not mean "actual cash value" and that they did not assess the "actual cash value": Humphreys v. Benefit Assn., 139 Pa. 264; Nordlund v. Life Ins. Co., 282 Pa. 389, 391; Brown v. Brooks, 25 Pa. 210; Edmonds v. Bank, 215 Pa. 547; Carey v. Bright, 58 Pa. 70; Glatfelter v. Mendels, 46 Pa. Superior Ct. 562; Zeigler's Petition, 207 Pa. 131, 136.

*W. M. Henderson,* of *Henderson & Henderson,* for appellee.—The policy is to receive such reasonable con-

struction as will enable the carrying out of the intention of the parties, evidenced by their words and the whole of the insurance contract: Nusbaum v. Ins. Co., 285. Pa. 332; 120 A. 481; Julius v. Ins. Co., 132 N. E. 435.

The appraisal was in accord with terms of policy. Sound value and actual cash value are synonymous: Fedas v. Ins. Co., 300 Pa. 555; Gulf Compress Co. v. Ins. Co., 167 S. W. 859.

The parties construed sound value and actual cash value as synonymous.

Parol evidence is not admissible to avoid the award, or to show the actual cash value: Hostetter v. Pittsburgh, 107 Pa. 435; Boston Water Power Co. v. Gray, 6 Metcalf 131; Ketcham v. Hall Assn., 59 Pa. Superior Ct. 213; Liverpool, London & Globe Ins. Co. v. Goehring, 99 Pa. 13, 16; Everett v. Ins. Co., 142 Pa. 332.

OPINION BY MR. JUSTICE SCHAFFER, September 28, 1931:

This is an action of assumpsit on a policy of fire insurance. The fundamental question to be determined is the meaning of the terms "actual cash value" and "sound value." The trial judge held their meaning to be the same; the plaintiff, appellant, contends it is different.

The policy provides: "In consideration of the reduced rate and (or) form under which this policy is written, it is expressly stipulated and made a portion of this contract that in the event of loss this company shall be liable for no greater proportion thereof than the amount hereby insured bears to eighty per cent (80%) of the actual cash value of the property described herein at the time when such loss shall happen, nor for more than the proportion which this policy bears to the total insurance thereon." At the time of the fire the amount of the insurance was $32,000. The policy contained the following clause: "In case the insured and this company shall fail to agree as to the amount of loss or damage, each shall, on the written demand of either, select a com-

petent and disinterested appraiser. The appraisers shall first select a competent and disinterested umpire...... The appraisers shall then appraise the loss and damage, stating separately sound value and loss or damage to each item, and, failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized, of any two, when filed with this company, shall determine the amount of sound value and loss or damage."

Following the loss the insured and the company entered into an appraisal agreement in which the 80% reduced rate contribution clause was recited, as was the provision of the policy for appraisement, and the appraisers were appointed "to appraise, in accordance with the terms and conditions of said policy......the sound value of said property and the amount of loss or damage directly caused by said fire to and upon the same." The agreement provided: "The said two appraisers shall then appraise the loss and damage......; stating separately sound value and loss or damage to each item ......; such loss or damage shall be ascertained and appraised according to the actual cash value of said property at the time of the occurrence of said loss or damage, with proper deductions for depreciation, and shall in no event exceed what it would cost to repair or replace the same with material of like kind and quality."

In pursuance of this agreement, one of the appraisers and the umpire (the appraiser appointed by the company refusing to sign) made an award fixing the sound value of the property insured at $58,316 and the loss at $19,856. Plaintiff claimed that there was due to it on the defendant's policy which was for $10,000, $10\!\%_{32}$ds of the amount of the loss or the sum of $6,205. Defendant set up that under the provisions of the 80% coinsurance clause it was liable for only $4,256.13, being the proportionate share of the loss sustained in the ratio that the amount of insurance carried bore to 80% of the actual cash value of the property. The court on the trial took

the defendant's view and directed a verdict for the lesser sum with interest.

Plaintiff argues that actual cash value and sound value are not the same and on the trial offered to prove, by a witness familiar with the value of buildings, what the actual cash value of its building was at the time of the fire. This testimony was excluded upon the ground that the actual cash value had been determined by the appraisers in the establishment of sound value and for the reason that the terms sound value and actual cash value are synonymous. We are of opinion that the conclusion of the trial court was correct. Sound means undamaged. The sound value of anything is its worth, its actual cash value, in an undamaged condition. Actual cash value means what the thing is worth in money, allowing for depreciation. Sound value is the same thing, what the property was worth, allowing for depreciation, in its undamaged state. "Actual cash value means the actual value expressed in terms of money of the thing for the purpose for which it was used,—in other words, the real value to replace. The rule established by our decisions seeks a result which will enable the parties to restore the property to as near the same condition as it was at the time of the fire, or to pay for it in cash": Fedas v. Ins. Co. of State of Pa., 300 Pa. 555, 563. The policy itself indicates what is meant by actual cash value; it speaks of "Actual cash value (ascertained with proper deductions for depreciation) of the property at the time of loss or damage, but not exceeding the amount which it would cost to repair or replace the same with material of like kind and quality." It would be difficult to point out wherein this differs from sound value. As is convincingly stated in the brief of appellee's counsel, "The term actual cash value as used in the policy is not a value from which deductions shall be made on account of depreciation. It is the result obtained after allowing deductions for depreciation. It is the net result derived from a calculation or valuation in which depreciation

was an element considered, and for which allowance was made. It is the value of the insured property in the condition in which it was immediately before the fire. So that, as used in the policy in suit both actual cash value and sound value mean the value of the property as it stood before the fire, when it was sound; when it was undamaged." In Continental Ins. Co. v. Garrett, 125 Fed. 589, 591, it is said: "Sound value is the cash value, making an allowance for depreciation due to use, etc., at and immediately preceding the time of the fire." See also Mason v. Fire Assn. of Phila., 23 South Dakota 431, 122 N. E. 423; Commercial Union Assur. Co. v. Dalzell, 210 Fed. 605; William H. Low Est. v. Lederer Realty Corp., 35 Rhode Island 352, 86 Atlantic 881; Eberhardt v. Fed. Ins. Co., 14 Ga. App. 340, 80 S. E. 856.

In fixing sound value the appraisers fixed actual cash value. Under the very terms of the appraisal agreement their finding could not be contradicted. It provided that their finding "shall determine the amount of sound value and loss or damage." The clear import of our recent decision in Isaac v. Donegal & Conoy Mutual Fire Ins. Co., 301 Pa. 351, is that the appraisment is final. In that case the appraisers had not valued all the items of loss and we held for that reason it was not conclusive. Had it covered everything contemplated by the agreement as the one before us does, then the clear implication of the decision is that it would not have been subject to attack. The opinion said (page 356): "The agreement was to be a complete settlement and to prevent litigation; the award did not follow the submission and it encouraged litigation. ...... If there is a failure to pass upon all the matters submitted to arbitration, or if the award covers only a part of the loss or damage included in the submission, the award is not binding." The implied thought is, that if all the matters submitted to arbitration had been passed upon and if the award covered the entire loss it would have been binding. Confirming this conclusion, the opinion goes

on to say (page 358) : "Where it is conclusive as to the amount fixed therein, it is subject to the rules governing such awards, and will not be disturbed."

Plaintiff also offered to prove by one of the appraisers that there was a distinction in the minds of the appraisers between sound value and actual cash value. This offer was rejected on the ground that the witness could not be permitted to impeach his own findings. This ruling was correct: Eberhardt v. Federal Ins. Co., 80 S. E. 856. An award of arbitrators or appraisers, such as is provided for in the policy in this case and in the agreement of submission, cannot be set aside except for actual fraud or deception or for a mistake on the part of the appraisers which is not a mere mistake of judgment. Appellant argues that the offer was to show "an accident" or "excusable mistake" in that there was a misunderstanding of the term "sound value" by the appraisers. The mere averment that there was a distinction in the minds of the appraisers between "sound value" and "actual cash value" does not bring the situation within the rule that an award may be explained or altered because of mistake. Under the appraisal agreement entered into by the parties, the appraisers were instructed to appraise "the sound value" of the damaged property; this they did and no offer was made to change the figures arrived at. What appellant really says is that if the appraisers had been instructed differently in the reference writing, they would have brought in a different finding; this does not establish any "mistake" in their doing what they were instructed to do. Possibly they would have been wrong if the appraisal agreement had used other phraseology.

If the insured believed there was a distinction between "sound value" and "actual cash value," it is difficult to understand why the question was not raised at the time the appraisal agreement was entered into. Manifestly there was only one reason for having the appraisers fix upon a value of the property before the fire and that was

to determine the applicability of the 80% coinsurance clause. That clause referred to "80% of the actual cash value." Under the view now expressed by the insured, it must have supposed that, in directing the appraisers to fix "sound value," a useless and unnecessary act was being performed. Rather it would appear that when the award was made fixing a valuation which caused the building to be under-insured, the possibility of drawing a distinction between the two terms first occurred. In so supposing, the insured made a mistake—not the appraisers.

If an award could be set aside under such testimony as was here offered, then the finding of appraisers where the determination is the value of property, could be set aside in every case in which one of the arbitrators should testify that he had come to a mistaken conclusion as to its value and had reached the opinion that it was less or more. If this were the rule, there would be complete instability in arbitration awards. The mistakes which will avoid an award are in a very limited class. "An honest mistake of judgment in the conclusion of arbitrators which does not exceed the bounds of the submission is not, as a general rule, ground of impeachment of the award, whether the alleged mistake is one of fact or of law, or of both. ...... Such errors are among the contingencies which parties assume when they select such tribunals. When it is sought to set aside an award, upon the ground of a mistake committed by arbitrators, it is not sufficient to show that they came to a conclusion of fact erroneously, however clearly it may be demonstrated that the inference drawn by them was wrong. It must be shown that, by some error, they were so misled or deceived that they did not apply the rules which they intended to apply to the decision of the case, so that upon their own theory, a mistake was made which has caused the result to be somewhat different from that which they had reached by their reason and judgment. A contrary course, it is said, would be a substitution of

the judgment of a court in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation": 5 C. J. 179. A mistake which will be sufficient to avoid the award must be one that is plain and palpable, such as an erroneous computation or calculation of the amount, and the like: 5 C. J. 182, and cases cited.

A review of many of our cases,[*] not all of them harmonious, leads us to the conclusion that taken altogether they support the view that such testimony as appellant proffered should not be received to avoid an award. It would seem to be the policy of our law, as evidenced by the Act of April 25, 1927, P. L. 381, not to permit findings of arbitrators to be set aside except in very few instances. A looser rule to overturn them than the one we are applying has been voiced in some jurisdictions. We think ours the sounder one as it makes for the integrity of awards and for the stopping of litigation. "The general rule undoubtedly is that, unless restricted by the agreement of submission, arbitrators are the final judges of both law and fact, and an award will not be reviewed or set aside for mistake in either. And this is the reasonable view, for a contrary holding would mean that arbitration proceedings, instead of being a quick and easy mode of obtaining justice, would be merely an un-

---

[*] Large v. Passmore, 5 S. & R. 51; Roop v. Brubaker, 1 Rawle 304; Speer v. Bidwell, 44 Pa. 23; Reynolds v. Caldwell, 51 Pa. 298; Liverpool, etc., Co. v. Goehring, 99 Pa. 13; Hostetter v. Pittsburgh, 107 Pa. 419; First Nat. Bank of Clarion v. Brenneman's Exrs., 114 Pa. 315; Hamilton v. Hart, 125 Pa. 142; Hartupee v. Pittsburgh, 131 Pa. 535; Lucas Coal Co. v. Delaware & Hudson Canal Co., 148 Pa. 227; English v. Wilmerding School Dist., 165 Pa. 21; Bowman Bros. v. Stewart, 165 Pa. 394; Chambers v. McKee & Bros., 185 Pa. 105; Com. ex rel. v. Pittsburgh, 206 Pa. 379; Pittsburgh Construction Co. v. West Side Belt R. R. Co., 227 Pa. 90; Klingensmith v. Tin Plate Co., 17 Pa. Superior Ct. 210; McNally v. R. R. Co., 33 Pa. Superior Ct. 51; Ketcham v. Odd Fellows Hall Assn. of Reading, 59 Pa. Superior Ct. 213.

necessary step in the course of litigation, causing delay and expense, but settling nothing finally": 2 Ruling Case Law 392.

The assignments of error are overruled and the judgment is affirmed.