## BOWLES v. KATZ.

No. 4667.

District Court, E. D. Pennsylvania.

June 28, 1945.

Robert J. Callaghan, District Enforcement Attorney, Walter N. Moldawer, Chief, Food Enforcement Section, and

Jacob S. Richman, all of Philadelphia, Pa., Enforcement Attorney, for plaintiff.

John Edward Sheridan, of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

This is an action for an injunction brought by the Administrator of the Office of Price Administration pursuant to Section 205(a) of the Emergency Price Control Act of 1942, 56 Stat. 23, as amended, 50 U.S.C.A. Appendix, § 901 et seq. Plaintiff alleges that the defendant, from December 1, 1944, to April 13, 1945, engaged in acts and practices which constitute a violation of Section 4(a) of that Act in that defendant has violated Sections 8 and 12 of Maximum Price Regulation No. 355, effective May 17, 1943 (8 F.R. 4423), and also Section 4002.4(4) of Office of Economic Stabilization Regulation No. 1, effective August 5, 1943 (8 F.R. 10988), promulgated pursuant to Section 2(a) of the Emergency Price Control Act.

Briefly, defendant, trading as the Central Meat Market, is charged with selling, delivering, displaying and offering to sell and deliver certain meats at higher than maximum prices (Sec. 12, MPR No. 355), failing to post in his store the official list of retail meat prices, failing to tag meats on display with the selling price (Sec. 8 MPR, No. 355), and failing to separate and designate meats on display by the appropriate official grade (Sec. 4002.4(4), O.E.S.R. No. 1).

The factual question for determination is whether the defendant did commit the violations alleged. Of course, as always in cases of this kind, the legal argument goes to the exercise by the Court of its discretion to grant or refuse the equitable relief requested.

The parties have stipulated that the hearing be considered as final in this matter. The cause having been heard by the Court without a jury, on the basis of the pleadings and additional evidence, I make the following

### Findings of Fact

1. Plaintiff is the Administrator of the Office of Price Administration.

2. At all times since December 1, 1944, the defendant Samuel Katz, has been and is engaged in the business of selling beef, veal, lamb, and mutton cuts at retail, and owns, operates and manages a retail meat market situate at 1300 West Columbia Avenue, Philadelphia, Pennsylvania, known as Central Meat Market.

3. Pursuant to the provisions of Section 2(a) of the Act, the Price Administrator and the Director of Economic Stabilization issued, and there was published in the Federal Register, the following Regulations, which Regulations, as amended, have been at all times since the dates of issuance, and at all times mentioned herein, in full force and effect: Maximum Price Regulation No. 355, "Retail Ceiling Prices for Beef, Veal, Lamb and Mutton Cuts and all Variety Meats and Edible By-Products" (8 F.R. 4423), issued April 5, 1943, effective May 17, 1943; and Office of Economic Stabilization Regulation No. 1, "Grading and Grade-Labeling of Meats" (8 F.R. 10988), issued August 5, 1943, effective August 5, 1943.

4. Section 8 of the aforementioned MPR No. 355 requires the posting, not later than June 21, 1943, of the "Official O.P.A. List of Retail Meat Prices," or an exact copy thereof, on or at the meat counter in one or more places where customers can easily see and read it; the posting of such list for each 20 feet of meat counter space; and the tagging of meat cuts on display with the selling price for the cut.

5. Section 12 of the aforementioned MPR No. 355 prohibits, inter alia, on or after May 17, 1943, selling or delivering any meat cut at a higher price than the ceiling price for the same grade or type, or agreeing, offering, soliciting or attempting to do the foregoing.

6. Section 4002.4(4) of the aforementioned Office of Economic Stabilization Regulation No. 1, requires that each grade of meat which shall have been separated in the showcase as required in subsection (3) of that section, shall be designated by the appropriate official grade, so that customer can see and read it.

7. Three investigators from the Office of Price Administration made four separate investigations on December 8, 1944, February 12, 1945, February 20, 1945 and March 15, 1945, to determine defendant's compliance with the aforesaid Regulations.

8. Of all the meat displayed at the time of these visits, four items were quoted over the ceiling price, one at the ceiling price, seven under the ceiling price, and two items could not be identified on the ceiling price chart.

9. On one visit, the Official OPA List of Retail Meat Prices was adequately posted and on one visit it was not adequately posted. On two occasions the meat on display had no price or grade tags.

10. Three checks were made by the local War Price and Ration Board on February 16, 1945, March 20, 1945, and April 13, 1945. On each occasion the Official Price List was adequately displayed; on one occasion meats on display were properly tagged; go meats were on display on one occasion; and no record was made on one occasion as to tagging. On each check, meats on display were quoted at prices either at or below ceiling prices.

11. No evidence was offered as to actual sales in excess of the maximum ceiling prices.

## Discussion

Plaintiff contends that the evidence in this case discloses a course of continued, wilful violation, over a period from December 1, 1944, to April 13, 1945, of the maximum price, the price list posting and the price and grade labeling regulations, and that it warrants the issuance of a final injunction by this Court in the exercise of its discretion. With this contention I find it difficult to agree.

One Edgar Campbell, an OPA investigator, testified that he visited defendant's store on December 8, 1944, and March 15, 1945. On the first occasion, with respect to three meat items on display, two were quoted above the ceiling prices and one under the ceiling price; the items were not tagged with selling price and grade; and the price list was partially obscured. On the second occasion the price list was properly posted, and of the five meat items, all were quoted below the ceiling price, one as much as eleven cents.

Another investigator, Helen Shackelford, testified that she visited defendant's store on February 20, 1945, when she observed four meat items on display in the showcase without grade labels or price tags. Of the four items, two were quoted three and five cents, respectively, above the ceiling price, one at the ceiling price and one a penny under the ceiling price. She also testified that the official price list was so posted as to make it impossible to read. Her testimony on the latter score was rather doubtful.

One Charles Greene, an OPA investigator, testified that when he visited defendant's store on February 12, 1945, no ceiling price list was posted anywhere in the store, nor were the displayed meats tagged. This investigator, unlike the others in this case, had made no record of his observations, and testified from memory. The weight to be given this evidence is diminished in view of the testimony of one Leon Steinberg, a member of the Price Panel of the local War Price and Ration Board and President of the local Business Men's Association. Steinberg stated that he visited defendant's store several times a week, including February 12, 1945, the day on which Greene claimed to have been there, and saw meat price lists and price tags.

In addition to the testimony of Steinberg, defendant also produced three check sheets of the local War Price and Ration Board. These check sheets, dated February 16, March 20, and April 13, 1945, disclosed that on each occasion the official OPA Ceiling Price List was adequately displayed. They also showed that, of a total of four meat items identifiable on the check list, three were offered for sale at from one to three cents below the ceiling price and one item at the ceiling price. The check sheet dated February 16, 1945, reveals that the selling price and grade tags were on the items displayed.

Finally, Katz testified that there are two ceiling price lists for meat items adequately posted in his store and that the meat items on display are tagged with the selling price and grade. As to those items which were reported by the investigators as being offered for sale at prices above the maximum, Katz asserted that the reason for the increased price was the fact that he had trimmed the fat from the meat before offering it for sale.

The plaintiff urges upon the Court the argument that the meat shortages render it unnecessary for defendant to sell at less than ceiling prices and that the unevenness of price arouses a suspicion that defendant does not know the ceiling prices. Inherent in the argument is the implication that selling honestly at below ceiling prices may cast unnatural suspicion upon the seller. When the seller offers and sells at below the ceiling price, the reason for his doing so is not important in a case, such as this, where the plaintiff does not contend that the prices quoted to the investigators were not the true offering prices. It is indeed difficult to construe as evidence against

the defendant an honest offering price at less than the ceiling.

While defendant may have over-quoted on four items, the evidence, in my opinion, does not support the conclusion that such over-quotations constitute a practice of continuing violations warranting injunctive relief, especially where so many items were quoted at below the maximum. The evidence with respect to his failure to properly post the ceiling price lists, while it shows a violation on one, or at the most, two occasions, does not, in my estimation, require the equitable relief demanded.

On full consideration, I cannot say that the violations which were committed by the defendant are of such degree, both in quantity and quality, as to warrant the exercise by this Court of its discretion to grant the injunction prayed for. Moreover, the evidence fails to establish that these violations were of such a continuing, wilful nature as to justify the conclusion that the defendant will continue to violate the regulations involved unless injunctive relief is granted: Brown v. Standard Oil Co., 1 Price Control Cases, par. 50,991.

Accordingly, I state the following conclusions of law:

1. This Court has jurisdiction of this action brought by the Administrator of the Office of Price Administration pursuant to Section 205(a) of the Emergency Price Control Act of 1942, as amended, to enjoin acts and practices of the defendant constituting violations of Section 4(a) of the said Act, of Maximum Price Regulation No. 355, "Retail Ceiling Prices for Beef, Veal, Lamb and Mutton Cuts and All Variety Meats and Edible By-Products" (8 F.R. 4423), issued April 5, 1943, effective May 17, 1943; and Office of Economic Stabilization Regulation No. 1, "Grading and Grade-Labeling of Meats" (8 F.R. 10988), issued August 5, 1943, effective August 5, 1943, and any other regulation issued by the Office of Price Administration, pursuant to the Act, establishing maximum prices for beef, veal, lamb and mutton cuts.

2. This Court has jurisdiction over the defendant.

3. The evidence does not disclose violations of the Regulations involved in such degree as to warrant this Court, in the exercise of its discretion, to issue an injunction.

4. The evidence is not of such character as to warrant the conclusion that defendant will continue to violate the Regulations involved unless injunctive relief is granted.

An Order may be submitted in accordance with this opinion.